## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT A. BURKE, ESQUIRE
ATTORNEY I.D. NO. 61268
PATRICK J. GALLO, JR., ESQUIRE
ATTORNEY I.D. NO. 316092
BRIAN J. FORGUE, ESQUIRE
ATTORNEY I.D. 322783
**MacELREE HARVEY, LTD.**
17 W. Miner Street
West Chester, PA 19381-0660
 (610) 436-0100

ATTORNEYS FOR PLAINTIFFS,
SUZANNE SOMERS and
SLC SWEET, INC.

| | |
|---|---|
| SUZANNE SOMERS<br>23961 Craftsman Road, Suite I<br>Calabasas, CA 91302 | CIVIL ACTION |
| and | |
| SLC SWEET, INC.<br>23961 Craftsman Road, Suite I<br>Calabasas, CA 91302 | NO. |
| Plaintiffs, | |
| v. | JURY TRIAL REQUESTED |
| QVC, INC.<br>Studio Park<br>1200 Wilson Drive<br>West Chester, PA 19380<br>Defendant. | |

## COMPLAINT

Plaintiffs, Suzanne Somers ("Ms. Somers") and SLC Sweet, Inc. ("SLC")

(collectively "Plaintiffs") by way of Complaint as against Defendant, QVC, Inc. ("QVC"),

by and through their attorneys hereby allege and set forth as follows:

## I.   NATURE OF THE ACTION.

This action arises out of QVC's fraudulent and malicious efforts to damage and remove a major competitor in the dietary supplement business so that it could promote its own supplement business.   As a result of QVC's actions, Plaintiffs have suffered extensive damages for which a jury trial is demanded.

## II.   THE PARTIES.

1.      Plaintiff, SLC is a California corporation with its principal place of business at 23961 Craftsman Road, Suite I, Calabasas, California 91302.

2.      Plaintiff, Ms. Somers is an individual who resides in California.   Ms. Somers has an address at 23961 Craftsman Road, Suite I, Calabasas, California 91302.

3.      Ms. Somers is also an enormously successful promoter and marketer of many products including, but not limited to, dietary supplements.   Ms. Somers has a large and loyal customer base.

4.      Defendant, QVC is, and at all relevant times, was a Delaware corporation with its principal place of business at 1200 Wilson Drive, West Chester, Pennsylvania 19380.

5.      Upon information and belief, QVC is a subsidiary of non-party Liberty Interactive Corporation ("Liberty Interactive").

## III.   JURISDICTION AND VENUE.

6.      This Court has subject matter jurisdiction of this action in accordance with 28 U.S.C. §1331 as this is a matter involving laws of the United States.   This Court also has subject matter jurisdiction over this action based upon 28 U.S.C. §1332 as this is an

action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  This Court also has supplemental jurisdiction over the matters subject to this dispute in accordance with 28 U.S.C. §1367.

7.     Venue is proper in this District pursuant to 28 U.S.C. §1391 as QVC's principal place of business is located in this District.

### IV.     ALLEGATIONS COMMON TO ALL COUNTS.

### QVC's Plan to Remove a Competitor

8.     Ms. Somers and SLC are and have been in the business of providing health and wellness products to the public.  These products include, but are not limited to, dietary supplements.

9.     Plaintiffs have been providing these products to the public in multiple platforms.

10.     These platforms include, but are not limited to, the internet (at such sites as SuzanneSomers.com) and on home shopping networks such as HSN and Evine.  Ms. Somers has been a very successful provider of products in this market for over twenty-five years.

11.     Immediately prior to February 1, 2017, Plaintiffs were providing their products in connection with agreements Plaintiffs had with Evine, a home shopping retailer.

12.     Plaintiffs' products were popular and sought after.  Plaintiffs were very successful in providing their products to the public in this forum.

13.     QVC was aware of Plaintiffs' success in providing these products to the public.

14.     In or around February 2017, QVC contacted Plaintiffs in an effort to lure Plaintiffs from Evine and to have Plaintiffs sell their products on QVC.

15.     At the time QVC made this approach to Plaintiffs, upon information and belief, QVC was the largest televised home shopping network in the United States.  QVC was ahead of its main competitor, Home Shopping Network ("HSN").

16.     During the approach to Plaintiffs, QVC did not have a dietary supplement business and was very interested in filling what QVC referred to as its "white space".

17.     QVC further represented to Plaintiffs that QVC was interested in marketing and selling Plaintiffs' products on QVC.

18.     It was represented to Plaintiffs that QVC did not have a dietary supplement business and was very interested in marketing and selling Plaintiffs' products on QVC.

19.     Following several discussions, Plaintiffs and QVC agreed to enter into an agreement dated March 21, 2017 (the "Agreement").   A copy of the Agreement is attached hereto and incorporated as Exhibit "A".

20.     Plaintiffs and QVC negotiated this Agreement to assure that the terms of the Agreement accurately reflected what the parties intended.

21.     Attached to the Agreement is a Form Purchase Order that was incorporated into the Agreement (the "Form Purchase Order").  A copy of the Form Purchase Order is attached hereto and incorporated as Exhibit "B".

22.     The parties agreed that the Form Purchase Order would be used by QVC when QVC ordered products from Plaintiffs.

4

23.    Under the Agreement, QVC had no right to alter the terms of the Form Purchase Order.

24.    Unbeknownst to Plaintiffs, QVC had no real intention of honoring the Agreement or the Form Purchase Order and only induced Plaintiffs to enter into the Agreement in order to remove a competitor from the market.

25.    Prior to the date of the Agreement, QVC's main competitor in the home shopping space was HSN.  At that time, Liberty Interactive owned approximately 38% of HSN.

26.    Upon information and belief, prior to the date of the Agreement, Liberty Interactive, HSN and QVC were aware that Liberty Interactive was in the process of negotiating and agreeing to purchase the remaining approximately 62% of HSN.

27.    One of the leading brand partners on HSN at this time was Andrew Lessman ("Mr. Lessman").

28.    Upon information and belief, Mr. Lessman had an exclusive relationship with HSN where he was the only vendor allowed to sell supplements on the entire network.

29.    Plaintiffs allege, upon information and belief, that when QVC merged with HSN, Mr. Lessman insisted that his exclusive contract as the only supplement vendor at HSN be extended to QVC, thereby forcing QVC to eliminate Ms. Somers as a vendor.

30.    Liberty Interactive had a vested interest in Mr. Lessman's successful sales in the dietary supplement market on HSN.

31.    Mr. Lessman provided dietary supplements to the customers of HSN in the same manner in which Plaintiffs provided dietary supplements to the customers of Evine.

32.     Plaintiffs and Mr. Lessman were competitors in the dietary supplement market.

33.     Upon information and belief, prior to entering into the Agreement with Plaintiffs, Liberty Interactive, HSN and QVC were aware that the HSN acquisition was likely to occur and that, as a result, QVC would now be able to partner with Mr. Lessman in order to enter into the dietary supplement business.

34.     Plaintiffs' successful presence in the dietary supplement business would hinder QVC's future business relationship with Mr. Lessman.

35.     Despite this knowledge, QVC represented to Plaintiffs that QVC did not have dietary supplement products that were available for sale to the public.

36.     Prior to entering into the Agreement, QVC represented to Plaintiffs that QVC wanted Plaintiffs to fill that "white space".

37.     The dietary supplement business is a very competitive market.

38.     Prior to entering into the Agreement, it was in the interest of QVC, HSN and Liberty Interactive to eliminate and/or otherwise damage competitors to Mr. Lessman in the dietary supplement business.

### QVC's Misrepresentations to Plaintiffs

39.     Prior to entering into the Agreement, QVC made multiple representations to Plaintiffs in order to lure Plaintiffs to QVC.  QVC had no intention of fulfilling these representations but was only interested in removing Plaintiffs as competitors to QVC's business.

40.     Plaintiffs did not know, and had no reason to know, that these representations were false.

6

41.     Specifically, QVC provided false forecasts to Plaintiffs as to the amount of product that QVC expected Plaintiffs would sell on QVC in the event Plaintiffs left Evine and came to sell their products at QVC.

42.     QVC misrepresented to Plaintiffs that Plaintiffs would be receiving significant airtime in order to market and sell SLC's products on QVC.

43.     This was false as QVC had no intention of providing significant airtime to Plaintiffs.

44.     QVC misrepresented to Plaintiffs that QVC would be purchasing significant product from SLC immediately upon the signing of the Agreement.

45.     This representation was also false, as QVC had no intention of purchasing these products from SLC.

46.     Prior to entering into the Agreement, it was readily apparent that QVC had done its due diligence with respect to SLC's dietary supplement products.  QVC was very familiar with the types of products that SLC was providing, the ingredients for these products and the claims that SLC was making regarding these products.

47.     This due diligence included, but was not limited to, specifically identifying the types of products that QVC was going to purchase from Plaintiffs and the ingredients for those products.

48.     It was represented to Plaintiffs that QVC would be ready to purchase these products upon the signing of the Agreement so that QVC could put Plaintiffs on their network soon after the signing of the Agreement.

49.     These representations were false.

7

50.     QVC represented that QVC projected that SLC's sales would be ten times what SLC's sales were at Evine.

51.     These representations were also false, as QVC knew that QVC would assure that SLC's sales never reached this level.

52.     Upon the signing of the Agreement, QVC immediately issued Purchase Orders for the purchase of multiple products from SLC.  These Purchase Orders were initially dated March 21, 2017.  Additional Purchase Orders were issued.  Copies of these Purchase Orders are attached hereto and incorporated as Exhibit "C" (hereinafter, the "March 2017 Purchase Orders").

53.     In violation of the parties' Agreement, QVC significantly altered the terms of the Agreement Form Purchase Order that had been agreed to by the parties.

54.     Specifically, the March 2017 Purchase Orders contained terms that were not agreed to by the parties.

55.     The March 2017 Purchase Orders stated "this order is conditionally issued, pending QVC approval of first-piece QA sample.  Absent such approval, vendor is solely responsible for any action taken or not taken by vendor in reliance on this order."

56.     This language is not contained in the agreed to Form Purchase Order.

57.     The March 2017 Purchase Orders also contained a term that QVC argued entitled QVC to return any product for any reason.

58.     This was never agreed to by the parties.

59.     These March 2017 Purchase Orders were initially issued the same day QVC signed the Agreement.

8

60.     Accordingly, QVC had no intention of honoring the terms of the Agreement or the Form Purchase Order.  QVC's actions amount to fraud in the execution.

61.     Upon committing this fraud, QVC purported to use the terms set forth in the March 2017 Purchase Orders, and subsequent purchase orders, as a basis for the improper rejection of product that QVC ordered from Plaintiffs.

62.     As set forth below in detail, it became later known to Plaintiffs that QVC had no intention of selling products that QVC ordered that were the subject of the March 2017 Purchase Orders and/or subsequent purchase orders.

63.     To the contrary, QVC ended up rejecting much of the product.  QVC's rejection of these products was improper and in violation of the parties' Agreement.

64.     The products that were improperly rejected by QVC became unsalable.

65.     Specifically, as QVC was aware, these products contained expiration dates.

66.     QVC improperly delayed action with respect to these products so that the expiration dates came due or were soon to come due.

67.     By the time QVC improperly rejected these products, the products were unable to be sold to other customers.

68.     These Purchase Orders reflect the order of thousands of products.

**QVC's Merger with HSN**

69.     On July 6, 2017 (after QVC locked in one of the major competitors in the dietary supplement business by signing the Agreement), Liberty Interactive (QVC's and HSN's parent) announced that it was purchasing the remaining approximately 62% stake in HSN.

9

70.     In making the announcement, it was stated that HSN would operate under the control of QVC.

71.     The effective merger of HSN and QVC would create what QVC anticipated to be the third largest e-commerce platform (behind only Amazon and Walmart).

72.     Liberty Interactive and QVC needed to assure that this merger would be successful.

73.     The merger of HSN with QVC was done in order to enable QVC to gain extensive competitive advantages in the marketplace.

74.     The HSN merger was also completed in order to permit QVC to gain control of major brands, such as Mr. Lessman's dietary supplement products.

75.     Mr. Lessman's products were a significant part of the merger and a driving force behind Liberty Interactive's decision to acquire the remaining ownership interest in HSN.

### QVC's Failure to Perform Under the Agreement

76.     As set forth above, in performing its due diligence prior to entering into the Agreement with Plaintiffs, QVC was very familiar with the products that SLC was providing.

77.     This familiarity included specific knowledge of the ingredients for each product.

78.     QVC was also aware of the general claims that Plaintiffs made about the products because QVC had viewed Plaintiffs' presentations on Evine.

79.     QVC was also aware that Plaintiffs had sold their products on Evine without any regulatory violations.

3363535v1
191601.65822

80.     The fact that Plaintiffs had sold their dietary supplements on Evine without regulatory violations was important to QVC.

81.     In spite of this familiarity, QVC (after the execution of the Agreement) maliciously placed onerous and arbitrary requirements upon the products that Plaintiffs were providing.

82.     Specifically, QVC misrepresented that QVC had a requirement that QVC would not be able to purchase any products from SLC that contained more than one ingredient.

83.     QVC falsely stated that it would not accept products with more than one ingredient unless the entire formula had been tested in a submitted study that QVC would approve.

84.     QVC had no such actual restriction on the purchase of these products.  To the contrary, QVC (and HSN) had and continue to purchase products containing more than one ingredient from other manufacturers.

85.     QVC invented false testing requirements and purported to apply those to Plaintiffs.

86.     QVC misrepresented that Plaintiffs could not make claims about their products that compared these products to other dietary supplements.

87.     QVC also misrepresented that Plaintiffs could not make claims that referred to specific medical findings (including references to prescription medication).

88.     QVC used these misrepresentations (and others) as a purported basis to reject the products that it had ordered in the March 2017 Purchase Orders.

3363535v1
191601.65822

89.     QVC's improper rejection of these products caused Plaintiffs excessive damages.

90.     QVC intentionally delayed the improper rejection of these products, with specific knowledge that these dietary supplements contained very specific expiration dates.

91.     By intentionally delaying its improper rejection of these products, QVC saddled SLC with hundreds of thousands of dollars' worth of product for which SLC had already paid.  Moreover, because of QVC's actions, SLC could not mitigate its damages and incurred millions of dollars in damages.

92.     QVC improperly rejected and refused acceptance of these products and the products were therefore damaged by QVC's actions.

93.     Following the merger of QVC and HSN, Plaintiffs were notified by QVC that many of the previous, onerous restrictions that QVC had placed upon SLC's products were unwarranted and unnecessary.  This was only after Plaintiffs kept pressing QVC on QVC's absurd demands.

94.     This was a confirmation and acknowledgement by QVC that the previous restrictions that QVC had placed upon Plaintiffs were false, fraudulent and invented in order to damage Plaintiffs' business and remove a competitor from the dietary supplement market.

95.     The same exact products and substantiated claims that had previously been rejected by QVC were now acknowledged by QVC to be acceptable.

96.     QVC intentionally and maliciously sabotaged Plaintiffs with false and invented denials for over a year.

12

97.     By unreasonably restricting the products that SLC could sell and what Ms. Somers could claim about these products, QVC intentionally limited SLC's ability to sell dietary supplements on QVC.

98.     QVC also intentionally and improperly limited Plaintiffs on-air appearances and airtime.

99.     These restrictions were done with the purpose of damaging Plaintiffs' dietary supplement business and damaging Plaintiffs' ability to sell these products and were done to benefit Mr. Lessman's business.

100.    All of these actions have caused immediate financial loss, reputational loss and loss of customer base.

101.    QVC was legally obligated to exercise good faith in performing the Agreement, including in the exercise of its discretion, and was required to use its best efforts to promote the sale of Plaintiffs' products.

102.    QVC did neither. Relying on false approval standards and misapplying correct standards, QVC materially and repeatedly breached the Agreement by improperly rejecting Plaintiffs' products, claims, substantiation of claims, and scripts/talking points for Ms. Somers' on-air sale of products.

103.    These foregoing representations and rejections were arbitrary and were contrary to what HSN permitted Mr. Lessman to sell and claim and what QVC permitted Mr. Lessman to sell and claim after QVC merged with HSN in January 2018.

104.    That QVC's rejections of SLC's products and claims were made in bad faith is evidenced by, among other things, QVC's subsequent approval of products and claims relating to Plaintiffs' products and regarding the sales of substantially similar

products by Mr. Lessman on HSN and on QVC after QVC's merger, including products that contained more than one ingredient.

105.   QVC approved Mr. Lessman's products and sales with no greater substantiations by Mr. Lessman than that which had previously been provided by SLC and rejected by QVC.

106.   QVC-approved claims made by Mr. Lessman are ones that QVC had falsely advised Plaintiffs they could not make because of alleged regulatory prohibitions and risk concerns.

107.   QVC later admitted that many of the restrictions QVC placed on Plaintiffs were never justified.

108.   QVC's intentional and malicious delay in reviewing Plaintiffs' products also significantly impaired SLC's ability to timely order and develop products, have sufficient products available for shows, and prepare for shows.

109.   QVC's intentional actions in this regard greatly reduced Plaintiffs' opportunities for success.

110.   QVC intentionally limited Ms. Somers' exposure to her customer base, who were accustomed to seeing her on Evine and HSN for many hours each month over her twenty-five year career.

111.   QVC's actions have diminished Plaintiffs' brands. By unreasonably restricting the products that SLC could sell and what Ms. Somers could claim and say about those products, and by providing limited on-air visibility for Ms. Somers, QVC severely limited SLC's and Ms. Somers' chances of success.

14

112.    When, as a result of all these limitations, on-air sales allegedly did not meet QVC's expectations, QVC used those less-than-expected sales as a pretext to further restrict Ms. Somers' air time and placement, as well as the products she could sell and claims she could make.

113.    On January 17, 2019, QVC formally advised SLC and Ms. Somers that allegedly due to poor results, QVC would not be moving forward with Ms. Somers in supplement shows and it would no longer promote SLC's supplements.

114.    Having removed Plaintiffs as competitors, QVC is now able to sell dietary supplement products provided by Mr. Lessman and his companies without competition.

115.    It is not a coincidence that Mr. Lessman's products appeared on QVC.com within weeks of QVC's improper dismissal of Plaintiffs.

116.    It was only after QVC's improper dismissal of Plaintiffs in January 2019 that Plaintiffs became aware that it was always QVC's plan to sabotage Plaintiffs' dietary supplement business so that HSN and QVC could promote and enable Mr. Lessman to more successfully sell his products.

117.    QVC's plan to remove Plaintiffs as competitors, enabled QVC's dietary supplement business to grow.  This was done to benefit QVC and Mr. Lessman and harm Plaintiffs.

118.    QVC's clear communication that it would not continue with performance of the Agreement constitutes a repudiation and anticipatory repudiation of the Agreement, thereby relieving SLC and Ms. Somers of any obligations and duties they may have had under the Agreement, and terminating and waiving any license or other rights QVC may have had under the Agreement.

15

119.   QVC's wrongful inducement of SLC and Ms. Somers to enter into the Agreement, QVC's wrongful inducement of SLC to fill Orders issued by QVC, and QVC's material breaches of the Agreement also excuse SLC's and Ms. Somers' performance under the Agreement and terminates any rights QVC may have had under the Agreement.

120.   QVC's conduct has caused significant financial, reputational, goodwill, and incidental damages to SLC and Ms. Somers, and has also made QVC liable for punitive damages and attorneys' fees and costs to the extent permitted by law.

## COUNT I:
## BREACH OF CONTRACT

121.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

122.   The Parties entered into the Agreement which is a legally enforceable contract.

123.   QVC breached the Agreement, as detailed above by, among other things:

a.   Inducing SLC and Ms. Somers to leave Evine under false pretenses;

b.   Imposing unwarranted limitations and delays on the approval/denial process of SLC's products and claims;

c.   Issuing the March 2017 Purchase Orders totaling $1.3 million worth of perishable inventory and allowing a large portion of the inventory to expire due to QVC's application of overly restrictive and dilatory approval/review processes;

d.   Improperly rejecting SLC's products, claims, substantiation of claims, and scripts/talking points for Ms. Somers' on-air sale of products;

e.   Approving claims for Mr. Lessman on HSN, including claims concerning "Combination" products, which QVC would not allow Plaintiffs to promote;

f.   Severely limiting Ms. Somers' on-air appearances;

16

g.   Severely limiting the products Ms. Somers could sell on-air;

h.   Placing Ms. Somers on little-watched networks at "off hour" times with smaller audiences;

i.   Pairing Ms. Somers with an inexperienced, first-time solo host in an early-morning time-slot;

j.   Providing Ms. Somers only a total of 7 ¼ hours of on-air time over the first 18-months Ms. Somers worked with QVC;

k.   Refusing to engage with SLC's experts with respect to "Combination" products and other issues;

l.   Refusing to meaningfully engage with science and substantiations provided by qualified experts at Life Extension, the manufacturer of the products sold to SLC, as a result of the sham March 2017 Purchase Orders;

m.   Failing to build SLC and Ms. Somers' brand as promised when QVC lured Ms. Somers away from Evine;

n.   Citing sales figures to further restrict Ms. Somers' air time and placement; and

o.   Returning products in violation of the Agreement.

124.   Plaintiffs fully and in good-faith fulfilled their obligations under the Agreement and complied with QVC's directives throughout the Parties' relationship.

125.   The foregoing breaches of the Agreement by QVC have caused Plaintiffs significant damages.

126.   In light of the foregoing, QVC has not only breached the Agreement, but violated the implied duty of good faith and fair dealing inherent in every contract.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory damages in excess of $150,000 and such further relief as this Court deems just and proper.

## COUNT II:
## VIOLATION OF UNIFORM COMMERCIAL CODE
### (Manner and Effect of Rightful Rejection)

127.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

17

128.    Under the UCC, rejection of goods must be made within a reasonable time after delivery or tender.

129.    QVC failed to inspect and/or reject SLC's goods within a commercially reasonable time.

130.    QVC engaged in repeated and lengthy delays, often for months at a time, in reviewing SLC's requests for approval of products and claims.

131.    QVC rejected, delayed approval, and refused Plaintiffs' products which caused them to be damaged and unsalable.

132.    The manner in which QVC inspected and/or rejected SLC's products throughout the Parties' relationship was not commercially reasonable under the UCC and caused significant damage to SLC.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory and incidental damages in excess of $150,000, in addition to all applicable damages recoverable under the UCC, and such further relief as this Court deems just and proper.

### COUNT III:
### VIOLATION OF UNIFORM COMMERCIAL CODE
### (Output, Requirements and Exclusive Dealings)

133.    Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

134.    Under the UCC, in an exclusive dealing for goods, the seller is obligated to use best efforts to supply the goods and the buyer is obligated to use best efforts to promote the sale of the goods.

135.    QVC failed to use their best efforts to promote the sale of SLC's products.

18

136.   QVC's collective actions throughout its relationship with SLC establish that QVC did not use its best efforts to promote SLC's products, and in doing so, violated the UCC.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory and incidental damages in excess of $150,000, in addition to all applicable damages recoverable under the UCC, and such further relief as this Court deems just and proper.

### COUNT IV:
### VIOLATION OF UNIFORM COMMERCIAL CODE
### (Anticipatory Repudiation)

137.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

138.   Under the UCC, anticipatory repudiation of a contract occurs with respect to performance not yet due, the loss of which will substantially impair the value of the contract to the other.

139.   QVC repudiated the Agreement by insisting that SLC's products adhere to standards inconsistent with and unsupported by FTC/FDA regulations.

140.   QVC's self-imposed standards for substantiation flew in the face of well-known, established industry practices, and were contrary to what QVC permitted others, specifically Mr. Lessman, to sell and claim.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory and incidental damages in excess of $150,000, in addition to all applicable damages recoverable under the UCC, and such further relief as this Court deems just and proper.

3363535v1
191601.65822

**COUNT V:**
**UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND**
**PROFESSIONS CODE § 17200 *et seq.***

141.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

142.   Section 17200 *et seq*. of the California Business & Professions Code ("UCL") broadly covers three varieties of unfair competition – acts that are unlawful, unfair and/or fraudulent.

143.   The intent and purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.

144.   The coverage of Section 17200 *et seq*. is broad and intended to, among other things, enjoin ongoing wrongful business conduct in whatever context such activity might occur.

145.   Plaintiffs are each "persons" within the meaning of Section 17201 of the UCL.

146.   Plaintiffs are competitors with QVC, Mr. Lessman and Mr. Lessman's company, for the marketing, sale, and distribution of dietary supplements via direct television programming.

147.   As alleged herein, QVC's exclusionary, suppressive, deceptive, monopolistic and/or wrongful conduct constitutes "unfair" business practices as defined by the UCL.

148.   Conduct that significantly threatens or harms competition, violates the policy or spirit of an antitrust law, or threatens an incipient violation of an antitrust law,

20

may be deemed "unfair" under the UCL.  *See* Cel-Tech Communications, Inc. v. Los Angeles Cellular Co., 20 Cal. 4th 163, 187 (1999).

149.   A practice may be deemed "unfair" even if not specifically proscribed by some other law.

150.   In addition, QVC's conduct is "fraudulent" under the UCL.

151.   Plaintiffs have standing under the UCL as Plaintiffs have suffered an injury in fact and have lost money and property resulting from QVC's unfair, unlawful, and/or fraudulent actions.

152.   Indeed, QVC was aware of Plaintiffs' success in providing health and wellness products to the public and approached Plaintiffs to lure them from Evine to purportedly fill a "white space" of selling such products on QVC.

153.   Unbeknownst to Plaintiffs, QVC had no intention of honoring the Agreement and only induced Plaintiffs to enter into the Agreement to remove a competitor from the home shopping market as evidenced by QVC's acquisition of HSN and Mr. Lessman, who was Plaintiffs' competitor in the dietary supplement market.

154.   QVC further injured Plaintiffs not only by removing them from the direct television programming nutritional supplement market, but by ordering $1.3 million worth of products and wrongfully delaying their sale such that many of the products expired and could not be repurposed or resold.

155.   QVC has engaged and continues to engage in business acts that are unfair, fraudulent, and/or unlawful.

3363535v1
191601.65822

156.    The harm to competition and restraint on trade caused by QVC's unfair, fraudulent, and/or unlawful conduct is substantial. There is no legitimate or procompetitive justification for QVC's anticompetitive and "unfair" conduct.

157.    Because of, and as a direct and proximate result of, QVC's unfair business practices and conduct, Plaintiffs have suffered, and will continue to suffer financial injury to their business.

158.    Pursuant to Section 17203 of the UCL, Plaintiffs are entitled to restitution from QVC for its injuries.

159.    QVC's unfair, fraudulent, and/or unlawful conduct has caused economic harm to Plaintiffs and on competition.

160.    Pursuant to Section 17203 of the UCL, the entry of permanent and mandatory injunctive relief against QVC is necessary to enjoin its on-going unfair, fraudulent, and/or unlawful business conduct. An injunction is needed to enable and restore consumer choice and competition in the direct television programming market for nutritional supplements.

161.    QVC's actions have deprived Plaintiffs of millions of dollars in lost revenue.

162.    Plaintiffs are California residents and have suffered harm in California as a result of QVC's conduct as described herein.

**WHEREFORE,** Plaintiffs demand judgment against QVC for restitution, injunctive relief, and such further relief as this Court deems just and proper.

3363535v1
191601.65822

## COUNT VI:
## FRAUD

163.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

164.   Prior to the parties entering into the Agreement, QVC was in the process of merging with HSN and, along with it, Plaintiffs' direct competitor, which was led by Mr. Lessman.

165.   Shortly after fraudulently inducing Plaintiffs into the Agreement, QVC publicly announced that it was merging with HSN.

166.   QVC wrongfully utilized the Agreement as a mechanism and vehicle to suppress and restrain Plaintiffs' ability to compete in the television programming dietary supplement market with QVC, Mr. Lessman and Mr. Lessman's company.

167.   QVC falsely induced and lured Plaintiffs into the Agreement in order to drive or "starve" Plaintiffs out of business by locking Plaintiffs into the Agreement and purposefully limiting its orders and/or ordering perishable products with the intent to cause Plaintiffs harm by delaying and rejecting those products without a legitimate basis and at a time when such products became expired.

168.   Plaintiffs were fraudulently induced to and did expend substantial sums of money to finance, manufacture and supply QVC with dietary supplements which QVC never intended to promote in good faith and/or offer for sale.

169.   QVC's actions also amount to fraud in the execution as set forth herein.

170.   QVC's representations to Plaintiffs were false when made, material, and Plaintiffs detrimentally relied on such representations in executing the Agreement.

3363535v1
191601.65822

171.   QVC had no intention of working with Plaintiffs when inducing Plaintiffs into the Agreement.

172.   QVC intentionally made material, false and misleading representations to Plaintiffs to induce Plaintiffs into the Agreement so QVC could eliminate a direct competitor.

173.   Plaintiffs have incurred substantial damages which continue to accrue as a result of QVC's fraudulent actions.  Such damages include, but are not limited to, lost business and revenue and damage to Plaintiffs' brand.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory damages in excess of $150,000, punitive damages, and such further relief as this Court deems just and proper.

## COUNT VII:
## PROMISSORY ESTOPPEL – IN THE ALTERNATIVE

174.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

175.   To lure SLC and Ms. Somers away from Evine, QVC promised that it would work with SLC and Ms. Somers to continue to "build a brand," inducing Plaintiffs to leave their productive relationship with Evine to fill the "white space" at QVC with respect to QVC's dietary supplement line.

176.   QVC should have reasonably expected its promises to induce Plaintiffs to leave Evine and join QVC.

3363535v1
191601.65822

177.   However, QVC failed to disclose that it had no intention of fulfilling its promises and was only looking to remove a competitor from the dietary supplement market.

178.   Based on QVC's promises and representations, Plaintiffs left Evine to join QVC.

179.   But for QVC's promises and omissions, SLC and Ms. Somers would not have ended their relationship with Evine, nor would SLC have ordered and paid for $1.3 million of inventory much of which became unusable, expired, and could not be resold.

180.   Injustice can only be avoided by enforcing QVC's original promises to Plaintiffs and compensating Plaintiffs for the damage QVC has caused.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory damages in excess of $150,000 and for such further relief as this Court deems just and proper.

### COUNT VIII
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

181.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

182.   A contractual relationship existed between Ms. Somers and Evine.

183.   QVC approached Ms. Somers purposefully intending to harm Ms. Somers' relationship with Evine by luring Ms. Somers from Evine under false pretenses and eliminating her as a major competitor in the home shopping market.

184.   QVC had no legitimate justification or privilege to interfere with Ms. Somers' contractual relationship with Evine.

3363535v1
191601.65822

185.   Ms. Somers has suffered actual damages as a result of QVC's intentional interference with Ms. Somers' contractual relationship with Evine.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory damages in excess of $150,000, punitive damages, and such further relief as this Court deems just and proper.

## COUNT IX:
## VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 2

186.   Plaintiffs repeat and incorporate by reference the allegations set forth above, as though fully and completely set forth here.

187.   This cause of action is brought pursuant to 15 U.S.C. § 15 to recover damages for violations Section 2 of the Sherman Act, 15 U.S.C. § 2.

188.   Section 2 of the Sherman Act declares unlawful "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2.

189.   QVC competes in the television programming nutritional supplement market.

190.   The television programming nutritional supplement market is an economically relevant market.

191.   QVC had specific intent to monopolize the television programming nutritional supplement market.

3363535v1
191601.65822

192.   In doing so, QVC engaged in anticompetitive or exclusionary conduct by fraudulently inducing and luring Plaintiffs into the Agreement which QVC utilized to restrain Plaintiffs' ability to compete and harm Plaintiffs with sham purchase orders.

193.   QVC possesses and controls nearly all of the television programming nutritional supplement market and has come dangerously close to monopolizing the market through its wrongful conduct if it has not done so already.

194.   Plaintiffs have been harmed as a result of QVC's attempts to monopolize the television programming nutritional supplement market.

**WHEREFORE,** Plaintiffs demand judgment against QVC for compensatory damages in excess of $150,000, threefold damages, attorney's fees, costs of suit and such further relief as this Court deems just and proper.

Respectfully submitted,

**MacELREE HARVEY, LTD.**

Date:   October 15, 2019          By:   _____

Robert A. Burke, Esquire
Attorney I.D. No. 61268
Patrick J. Gallo, Jr., Esquire
Attorney I.D. No. 316092
Brian J. Forgue, Esquire
Attorney I.D. No. 322783
17 West Miner Street
West Chester, PA  19381-0660
(610) 436-0100
Email:  rburke@macelree.com
              pgallo@macelree.com
              bforgue@macelree.com

*Attorneys for Plaintiffs, SLC Sweet, Inc.*
*and Suzanne Somers*

3363535v1
191601.65822