# EXHIBIT B

Exhibit "A"

(See Attached)

THIS PURCHASE ORDER ("Order") IS EXPRESSLY CONDITIONED ON ACCEPTANCE OF THE TERMS AND CONDITIONS HEREOF. Oral or written notice of acceptance by the vendor specified on the face hereof ("Vendor"), preparation to perform by Vendor and/or shipment of all or any part of the merchandise specified in this Order ("Merchandise") shall constitute acceptance by Vendor of the terms and conditions contained herein. BY ACCEPTANCE OF THIS ORDER, VENDOR REPRESENTS AND AGREES AS FOLLOWS:

1. If the shipping or delivery dates set forth on the face hereof cannot be met, Vendor will promptly inform QVC, Inc. or the subsidiary of QVC, Inc. specified on the face hereof, as applicable, ("Buyer") in writing, and at Buyer's offices in West Chester, Pennsylvania, of Vendor's best possible shipping or delivery dates which shall become part of this Order, if at all, only upon Buyer's written acceptance thereof.

2. Vendor hereby grants to Buyer the irrevocable right, by all means now or hereafter existing, to: (a) promote, market, and sell the Merchandise; (b) use the trademarks, trade names, trade dress, service marks, designs, logos, patents, copyrights and/or other intellectual property rights (collectively the "IP Rights") registered, owned, licensed to or used by Vendor in connection with the manufacture, use, promotion and sale of the Merchandise; (c) use, perform, play, synchronize and/or demonstrate, as applicable, (i) the Merchandise and its contents, and/or (ii) any promotional, advertising or similar material supplied by Vendor or Vendor's authorized agent for use in connection with such Merchandise, including promotional materials on Vendor's website(s) (collectively, "Promotional Material"); and (d) use the names, photographs, likenesses, voices and/or biographies of any individuals performing in or otherwise associated with the Merchandise, its contents and/or any Promotional Material. Buyer makes no representations with regard to the number of times, if any, that Merchandise will be marketed or promoted by Buyer.

3. In addition to and without prejudice to any and all other warranties, express or implied by law, Vendor represents, warrants and covenants to Buyer that: (a) Vendor possesses all licenses, permits, rights, powers and consents required to enter into and perform this Order, to sell to Buyer the Merchandise referenced herein and to grant to Buyer the rights granted herein; (b) Vendor's performance hereunder does not violate any agreement, instrument, judgment, order or award of any court or arbitrator; (c) all Merchandise furnished hereunder, including the production, sale, packaging, labeling, safety, testing, importation and transportation thereof, and all representations, advertising, prices, and allowances, discounts or other benefits made, offered or authorized by Vendor in connection therewith, shall at all times comply with all applicable federal, state, local, industry and foreign statutes, laws, rules, regulations and orders, standards and guidelines (collectively, "Laws"); (d) all claims concerning the Merchandise made by Vendor and its agents are, and will be, true and correct at the time such claims are made and supported by data which comply with applicable Laws; (e) where applicable, reasonable and representative tests as prescribed by Laws or governmental authorities have been performed or will be performed before shipment from Vendor to the warehouse designated by Buyer (the "Warehouse"); (f) all Merchandise furnished hereunder: shall be new, first quality merchandise; shall conform to all representations and/or specifications made by Vendor; shall conform to all instructions intended for customers; shall conform to the Vendor samples given to Buyer; shall be free from all defects (including latent defects) in workmanship, material and design; and shall not be reworked, rebuilt or refurbished merchandise; (g) all manufacturers' warranties are effective and enforceable by both Buyer and its customers; (h) all IP Rights and/or Promotional Material, and/or any component thereof, are valid and genuine, and the manufacture, use, sale, promotion, marketing, and performance of the Merchandise and/or Promotional Material, and/or any component thereof, will not infringe upon any domestic or foreign IP Rights, rights of privacy or publicity and/or any other third party rights, or cause Buyer to be liable to Vendor or any third party for any additional fees, costs or expenses; (i) the title of Vendor to the Merchandise is good and free and clear of all encumbrances and liens, and its transfer hereunder rightful; (j) neither the Merchandise nor any component part thereof is subject to any import quota restriction, rule or regulation preventing or forbidding the importation, use, promotion for sale or sale of the Merchandise or any component part thereof, or any duty, tariff, or penalty in connection therewith, except as previously disclosed in writing by Vendor to Buyer; (k) the Merchandise and similar goods are not, and have not been, subject to actual or alleged product liability or infringement claims, and Vendor is not aware of any facts or circumstances that could reasonably be expected to give rise to any such claims, except as disclosed on the face hereof; (l) the same or similar merchandise is not being and will not be offered to any other purchaser at a lesser cost or under more favorable terms than appear herein; (m) at Buyer's request, Vendor shall supply, at Vendor's sole expense, a product spokesperson subject to reasonable availability; and (n) Vendor shall maintain for the life of the Merchandise general liability insurance coverage on the Merchandise, including full product liability and advertising injury, in the amount set forth in the Regulations and Standards (as defined in Section 20 herein), with carriers acceptable to Buyer, and which shall include broad form Vendor's coverage in favor of Buyer, and Vendor will promptly provide Buyer with a certificate of insurance evidencing such required insurance coverage and naming Buyer as an additional insured. Vendor agrees to provide Buyer with any and all documents requested or required by Buyer at any time and from time to time to support the representations, warranties and covenants herein contained.

4. Vendor hereby agrees to protect, defend, hold harmless and indemnify Buyer, its subsidiaries and affiliates, and each of their respective customers, programming and other distributors, employees, agents, officers, directors, successors and assigns, from and against any and all claims, actions, suits, costs, liabilities, damages and expenses (including, without limitation, all direct, special, incidental, exemplary and consequential damages and losses of any kind (including, without limitation, present and prospective lost profits and lost business) and reasonable attorneys' fees) based upon or resulting from: (a) any alleged or actual infringement of the IP Rights, rights of publicity or privacy and/or any other third party rights arising from the sale, promotion of the sale and/or performance of the Merchandise, its contents and/or the Promotional Material; (b) any alleged or actual defect in any of the Merchandise; (c) any alleged or actual injury or death to person or damage to property arising out of the furnishing, use or performance of the Merchandise; (d) breach by Vendor of any representations, warranties or covenants; (e) any alleged or actual violation by Vendor and/or the Merchandise of any applicable Laws; and (f) any other breach by Vendor of the provisions of this Order. In the event Buyer notifies Vendor in writing of a claim, demand, action, suit or other matter ("Claim") to which the foregoing indemnity applies, Vendor shall, within five (5) days after receiving Buyer's notice of such Claim, (i) provide prompt assurance, to Buyer's reasonable satisfaction, of Vendor's ability to so indemnify Buyer, and (ii) commence to defend such Claim, at Vendor's sole cost and expense. In the event that Vendor fails to timely meet its obligations set forth in the immediately preceding sentence, Buyer may, at its option, assume the defense or settlement of such Claim in its own name and all recoveries from such Claim shall belong to Buyer. In the event Buyer makes such a recovery, said recovery shall be in addition to any and all other rights Buyer may have at law or in equity. Buyer may elect counsel to represent it, and Vendor shall be solely responsible for the payment or reimbursement, at Buyer's option, of counsel fees and all other fees and costs incurred in defending such Claim, for any and all damages arising thereunder, and for any and all amounts paid by Buyer in settlement thereof. Buyer shall have the right, at Buyer's option, to withhold from any payments due or which may become due to Vendor an amount (determined in Buyer's reasonable discretion) sufficient to cover all potential damages, losses, costs and legal fees that may be suffered by Buyer as a result of any Claim received by Buyer, its subsidiaries and/or affiliates. Once such Claim is resolved, appropriate adjustments will be made in accordance with this Order, and any withheld monies then due to Vendor shall be paid to Vendor or credited to Vendor or deducted from amounts due to Vendor, at Buyer's option, or any additional monies then owed by Vendor shall be charged to Vendor, at Buyer's option, as applicable. In addition, Vendor shall be responsible for all costs of any kind incurred by Buyer in responding to any discovery or legal process served upon Buyer, its subsidiaries and/or affiliates in connection with litigation between a third party and Vendor (or any person or entity affiliated with Vendor), which costs shall be charged to Vendor or deducted from amounts due to Vendor, at Buyer's option. The rights and remedies granted to Buyer under this section are in addition to, and not in lieu of, any and all other rights and remedies granted to Buyer under this Order and otherwise available to Buyer under law or in equity.

5. Time is of the essence. Buyer reserves the right to retain any funds due Vendor as security for indemnification and/or cancel this Order or any part hereof, with no liability or obligation to Vendor, in the event: (a) Buyer is notified that any Merchandise or IP Right infringes or is alleged to infringe upon any third party rights; (b) Vendor breaches or is anticipated to breach this Order; (c) Merchandise conforming to specifications will not be shipped or delivered on the dates and in the quantities specified on the face hereof; (d) fire, flood, windstorm, earthquake, war, act of terrorism, strike, or any other casualty or occurrence of a similar nature substantially and adversely affects Buyer's premises or business; or (e) any substantial change to Buyer's business (for whatever reason) occurs. In the event Buyer reasonably determines that any Merchandise sold by Buyer to its customers contains any defect and/or violates any Laws, Buyer may, in its sole discretion, subject to applicable law, determine (i) whether a voluntary recall or other corrective action is necessary or appropriate, (ii) the scope of any such voluntary recall and/or other corrective action, and (iii) the course of action to be taken (which will be at Vendor's sole expense) to effect such voluntary recall or other corrective action (including the determination as to whether Buyer's customers will be offered a replacement item of Merchandise or a refund of their purchase price and shipping and handling charges). The rights of Buyer in the foregoing sentence shall be in addition to any and all rights of Buyer contained in this Order.

6. Merchandise shipped or delivered to the Warehouse prior to the first permitted ship or delivery date specified on the face hereof, may, at Buyer's option, be returned to Vendor, at Vendor's risk and expense, and upon such return, shall be held by Vendor for Buyer until shipment or delivery on the specified date. Merchandise shipped or delivered to the Warehouse after the last permitted ship or delivery date specified on the face hereof may, at Buyer's option, be returned to Vendor, at Vendor's risk and expense, and upon such return, Buyer may cancel this Order, in whole or in part, without liability. Unless otherwise stated on the face hereof, Vendor shall ship the Merchandise in one shipment. In the event of shipment or receipt of an unauthorized quantity, Buyer may, at its option, either reject or accept the entire shipment unless partial shipments are authorized on the face hereof. Additional freight charges resulting from partial shipments shall be borne by Vendor. Partial shipments shall not cause Vendor's obligations to become severable. Notwithstanding Buyer's designation of a Warehouse, Buyer shall have the right at any time in its sole and absolute discretion to specify a substitute place of delivery for any Merchandise and may divert such

Merchandise in transit to such new delivery location, in each case, without the authorization of Vendor. Unless otherwise stated on the face hereof, Vendor shall pay or reimburse Buyer, at the direction of Buyer, for all freight, packing and insurance incident to the shipment of the Merchandise, including, without limitation, loading and unloading charges, mileage charges, taxes, tolls and other fees. Vendor agrees to follow Buyer's instructions with respect to shipment, routing and packaging. Vendor's failure to comply with the terms and conditions set forth in this Section or in Buyer's Regulations or Standards, may, at Buyer's option, result in the imposition of charges as set forth in such documents. In addition, any breach by Vendor of the provisions of Section 3(d) hereof shall result in the imposition of charges upon Vendor for all costs incurred by Buyer as a result of such breach (including, without limitation, the cost of customer refunds and all administrative costs). Any charges assessed as set forth herein may be deducted from any amounts due or which may become due to Vendor.

7. Merchandise furnished hereunder: (a) which is not in compliance with the Laws, this Order, the Regulations or the Standards; (b) which is returned by any of Buyer's customers for any reason; (c) for which the corresponding customer order is cancelled by any of Buyer's customers for any reason; (d) which has expired; (e) which fails to meet Buyer's quality control tests; (f) which fails to meet Buyer's carrier's quality, drop or other tests; or (g) which is or may be used in conjunction with merchandise furnished and rejected (or acceptance thereof revoked) under this Order or another order, may be rejected (or acceptance thereof by Buyer revoked) at Buyer's option and returned to Vendor. All expense of unpacking, examining, repacking, storing, returning and reshipping any Merchandise rejected (or acceptance of which has been revoked) as aforesaid shall be at Vendor's expense and risk. With respect to such returned Merchandise or identical merchandise purchased under a separate purchase order, Buyer shall, at its option, receive a credit or refund equal to the average cost of amounts paid by Buyer for each item of such Merchandise, or other identical merchandise, including, without limitation, in-bound freight charges (notwithstanding contrary Freight Terms, if any, set forth on the face hereof). In the event that Buyer shall opt to receive a refund, Vendor shall pay Buyer in immediately available funds within ten (10) days of Buyer's request. Buyer reserves the right to require full refund prior to the return of Merchandise pursuant to this Section. In the event that Buyer shall opt to receive a credit, Buyer may apply such credit toward any amounts due or which may become due to Vendor. Vendor agrees that Merchandise rejected or returned for any reason pursuant to the terms of this Order, whether or not such rejection is disputed by Vendor, will not be resold or otherwise distributed by Vendor unless all labels or other characteristics identifying Buyer and/or displaying any trade name or trademark of Buyer have been first removed. Vendor shall, within five (5) days of Buyer's request therefor, supply Buyer with a return authorization and other information as required by Buyer to facilitate return of Merchandise for any Merchandise Buyer elects to return to Vendor. Merchandise returned or rejected by Buyer is not to be replaced by Vendor without the prior written approval of Buyer. Vendor acknowledges that the Buyer does not inspect each item at receipt of Merchandise and that defects, imperfections or nonconformity with any representations, warranties or covenants set forth herein may not be discovered by Buyer until Merchandise shall have been purchased by its customers and returned to Buyer. Buyer's inspection, discovery of a breach of warranty, failure to make an inspection or failure to discover a breach of warranty shall not constitute a waiver of any of Buyer's rights or remedies whatsoever.

8. If a percentage greater than zero is indicated in the "Sale or Return" designation on the face hereof, then this is a "sale or return" transaction as defined in the Uniform Commercial Code as enacted in Pennsylvania, 13 Pa. C.S., Division 2. In addition to its right to return Merchandise as provided elsewhere in this Order, Buyer may return to Vendor, for credit or cash, at Buyer's option, all or any portion of the following: (a) with respect to "sale or return" transactions only, any Merchandise which is not sold by Buyer up to the percentage indicated in the "Sale or Return" designation on the face hereof (based on the aggregate amount of this Order) within sixty (60) days after remittance of the Subsequent Payment (as defined in Section 13 herein) or, if no Subsequent Payment, within one hundred and eighty (180) days after remittance of Buyer's Initial Payment to Vendor (as defined in Section 13 herein); and (b) with respect to all transactions, any Merchandise which has been sold to and then returned by customers at any time. The expenses incident to the return of Merchandise to Vendor under the foregoing clause (a) shall be paid by Buyer, unless otherwise specified on the face hereof. The expenses incident to the return of Merchandise to Vendor under the foregoing clause (b) shall be paid or reimbursed by Vendor in accordance with Section 7 of this Order. Buyer is not obligated to pay for any Merchandise returned to Vendor and is therefore entitled to an immediate and full refund of any and all monies previously paid to Vendor on account of such returned Merchandise. Buyer reserves the right to require full refund prior to the return of Merchandise pursuant to this Section. Vendor shall provide a return authorization and other information as required by Buyer to facilitate return of Merchandise. If Vendor fails or refuses to make arrangements for the return of Merchandise satisfactory to Buyer within five (5) days of Buyer's request to return such Merchandise, Buyer may, but shall not be required to, make such arrangements on Vendor's behalf and at Vendor's risk and expense. If Vendor fails or refuses to accept any returned Merchandise and/or to remit such refund to Buyer in a timely manner and in accordance with the terms of this Order, Buyer may debit such amount against Vendor's account and/or take such other action as it may deem necessary or desirable to recover the monies owed by Vendor. Buyer may also, at its option and in its sole discretion, dispose of such Merchandise

at any time and in any manner whatsoever and deduct from the proceeds thereof any and all losses, damages, claims, cost and expenses suffered or incurred by Buyer in connection with such Merchandise. The rights of Buyer set forth in this Section are in addition to, and not in lieu of, any and all other rights and remedies available to Buyer pursuant to this Order, applicable law or in equity.

9. If a percentage greater than zero is indicated in the "Payment Reserve" designation on the face hereof, then Buyer will withhold an amount equal to such percentage of the aggregate purchase price set forth on the face hereof (the "Reserve") from its Initial Payment and/or Subsequent Payment, at Buyer's option, to Vendor for the Merchandise, in anticipation of customer returns and, if a "sale or return" transaction, the return of unsold Merchandise to Vendor. With respect to the portion of the Reserve allocable to customer returns, if the aggregate amount of such returns exceeds the Reserve amount, then such excess shall, at Buyer's option, be immediately debited against Vendor's account or paid by Vendor to Buyer within fifteen (15) days of receipt of Buyer's request for such payment, and if the aggregate amount of such returns is less than the Reserve amount, then the remaining balance of the Reserve allocable to customer returns shall, at Buyer's option, be credited to Vendor's account or paid to Vendor. The foregoing is in addition to (and not in lieu of) Buyer's right to withhold monies due or which may become due to Vendor as provided elsewhere in this Order.

10. Vendor shall not assign this Order, or any part hereof, without the prior written consent of Buyer, and any such attempted assignment shall be void at the election of Buyer. All claims for money due or to become due from Buyer shall be subject to deduction by Buyer for any set-off, recoupment or counterclaim arising out of this Order or any other of Buyer's orders or agreements with Vendor, whether such set-off, recoupment or counterclaim arose before or after any assignment by Vendor.

11. In addition to any other charges due to Buyer from Vendor under this Order, effective with Merchandise shipped to Buyer on or after February 1, 2011, Buyer will recoup from Vendor a charge equal to 0.75% of Buyer's Order price for each unit of such Merchandise shipped and received by Buyer (each, a "QPlatforms Deduction"). QPlatforms Deductions will be recouped by Buyer regardless of the subsequent disposition of the Merchandise, including, without limitation, any and all returns of such Merchandise to Vendor for any reason, without credit or refund to Vendor.

12. Vendor shall have one (1) year after the date any charge is assessed under this Agreement, to object to such charge(s), which may include, without limitation charge-backs, set-offs, offsets, refund or deductions. Should the Vendor fail to object to any charge(s) within such one (1) year period, such charge(s) shall be binding on the parties.

13. Unless specified otherwise on the face hereof, the time for payment shall begin to accrue upon receipt of Merchandise at the Warehouse or receipt of invoice, whichever occurs later. If pay terms are set forth in both the "Initial Payment" and "Subsequent Payment" designations on the face hereof, then (a) the "Initial Payment" designation sets forth the terms of Buyer's initial payment to Vendor for the Merchandise received, which payment will be the aggregate purchase price for such Merchandise less the Reserve (as defined in Section 9) and any other holdbacks permitted herein and adjusted for any credits, debits, customer returns, refunds, allowances and unsold Merchandise (where applicable) as of the time of such payment (collectively, "Adjustments"), and (b) the "Subsequent Payment" designation sets forth the terms of any subsequent payment due from Buyer to Vendor, which payment will be the Reserve after Adjustments. If no payment terms are set forth in the "Subsequent Payment" designation, then the "Initial Payment" will be the aggregate purchase price for such Merchandise after Adjustments (less any holdbacks permitted herein, which holdbacks will only be paid to Vendor as provided elsewhere in this Order). Payment of all or any portion of the invoice does not constitute acceptance of any Merchandise covered by this Order and is without prejudice to any and all rights, remedies, claims or defenses of Buyer against Vendor and/or any third party.

14. Until date of shipment or delivery to Buyer, Vendor shall meet its lower prices and the lower prices of legitimate competition, or accept cancellation at Buyer's option. Buyer, in its sole discretion, shall determine the price at which Merchandise shall be offered for sale to its customers and shall retain all handling and shipping charges collected from its customers.

15. For purposes of this Order, "Confidential Information" means any agreement between Buyer and Vendor, all information in whatever form transmitted relating to the past, present or future business affairs, including, without limitation, the sale or pricing of Merchandise, customer lists and other customer information, research, development, operations, security, broadcasting, merchandising, marketing, distribution, financial, programming and data processing information of Buyer or another party whose information Buyer has in its possession under obligations of confidentiality, which is disclosed by Buyer, its subsidiaries, affiliates, employees, agents, officers or directors to Vendor or which is produced or developed during the working relationship between the parties. Confidential Information shall not include any information of Buyer that is lawfully required to be disclosed by Vendor to any governmental agency or is otherwise required to be disclosed by law, provided that before making such disclosure Vendor shall give Buyer an adequate opportunity to interpose an objection or take action to assure confidential handling of such information. Vendor shall not disclose any Confidential Information to any person or entity except employees of Vendor as required in the performance of their employment-related duties in connection with this Order, nor will Vendor use the Confidential Information

for any purpose other than those purposes expressly contemplated herein. Vendor shall not use any information obtained from Buyer's customers (e.g., through warranty cards or otherwise) to offer for sale to such customers any goods or services. Vendor shall not include with any Merchandise, any information that would enable Buyer's customers to acquire, either directly or indirectly, any additional merchandise from persons other than Buyer without first obtaining Buyer's written consent. In the event of a breach or threatened breach of this Section by Vendor, Buyer shall be entitled to obtain from any court of competent jurisdiction, preliminary and permanent injunctive relief, including, without limitation, temporary restraining orders, which remedy shall be cumulative and in addition to any other rights and remedies to which Buyer may be entitled. Vendor agrees that the Confidential Information referred to in this Section is valuable and unique and that disclosure or use thereof in breach of this Section will result in immediate irreparable injury to Buyer. Vendor shall inform those persons or entities having access or exposure to Confidential Information hereunder, of Vendor's obligations under this Section.

16. This Order, and all matters arising out of or relating to this Order, shall be governed by the laws of the Commonwealth of Pennsylvania applicable to contracts to be performed wholly therein, regardless of place of acceptance. Vendor and Buyer expressly exclude the application of the United Nations Convention on Contracts for the International Sale of Goods, if applicable. Vendor hereby consents to the exclusive jurisdiction of the state courts of the Commonwealth of Pennsylvania for the County of Chester and the federal courts for the Eastern District of Pennsylvania for all claims arising out of or relating to this Order, or any breach hereof, including, without limitation, any contract, equity, tort, fraud or statutory claims hereunder. Vendor hereby irrevocably agrees to service of process by certified mail, return receipt requested, to its address as set forth on the face of this Order or to such other address as Vendor may deliver to Buyer in writing.

17. No waiver by Buyer of any term, provision or condition hereof shall be deemed to constitute a waiver of any other term, provision or condition of this Order, or a waiver of the same or of any other term, provision or condition with regard to subsequent transactions or subsequent parts of the same transaction, including, without limitation, subsequent shipments under this Order.

18. If any provision contained in this Order shall be determined to be unenforceable or prohibited by law, then such provision shall be void, and the remaining provisions herein shall not in any way be affected or impaired thereby.

19. Vendor shall not issue any publicity or press release regarding Buyer or Buyer's activities hereunder without first obtaining Buyer's prior written approval and consent to such release.

20. This Order, together with (a) any other written warranties and specifications,(b)Buyer's shipping regulations (including, without limitation, Buyer's chargeback program), Buyer's supplier code of conduct and Buyer's return policies, in each case, as in effect from time to time (collectively, the "Regulations") and (c) any applicable standards provided by Buyer to Vendor from time to time, including, without limitation, Buyer's standards regarding the use of "conflict minerals" as defined in the Dodd-Frank Wall Street Reform and Consumer Protection Act (12 U.S.C. § 5301 et seq.) (collectively, the "Standards"), which Regulations and Standards are incorporated herein by reference,, constitute the full understanding of the parties hereto and a complete and exclusive statement of the terms of the parties' agreement concerning the Merchandise furnished hereunder. Vendor acknowledges that copies of Buyer's current Regulations and Standards may be accessed on Buyer's vendor portal located at https://vendorportal.qvc.com/my.policy and are available to Vendor upon written request to Buyer.

21. No condition, understanding or agreement purporting to modify or vary the terms of this Order shall be binding unless hereafter made in writing and duly executed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of this Order or of invoices, shipping documents or other documents containing terms or conditions at variance with or in addition to those set forth herein.

22. Notwithstanding any legal presumption to the contrary, the covenants, conditions, representations, indemnities and warranties contained in this Order, including, without limitation, Sections 3, 4, 7 and 14 hereof, shall survive inspection, delivery, acceptance and payment, shall be binding upon Vendor and its successors and permitted assigns, and shall run in favor of Buyer and its successors and assigns.

Revised 10/2014