**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROBERT A. BURKE, ESQUIRE
ATTORNEY I.D. NO. 61268
PATRICK J. GALLO, JR., ESQUIRE
ATTORNEY I.D. NO. 316092
BRIAN J. FORGUE, ESQUIRE
ATTORNEY I.D. 322783
**MacELREE HARVEY, LTD.**
17 W. Miner Street
West Chester, PA 19381-0660
 (610) 436-0100

ATTORNEYS FOR PLAINTIFFS,
SUZANNE SOMERS and
SLC SWEET, INC.

| | |
|---|---|
| SUZANNE SOMERS | CIVIL ACTION NO. 2:19-cv-04773-CFK |
| and | |
| SLC SWEET, INC. | |
| Plaintiffs, | |
| v. | JURY TRIAL REQUESTED |
| QVC, INC. | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs, Suzanne Somers ("Ms. Somers") and SLC Sweet, Inc. ("SLC")

(collectively "Plaintiffs"), by and through their undersigned attorneys, hereby submit this

Memorandum of Law in Opposition to Defendant, QVC, Inc.'s ("QVC" or "Defendant")

Motion to Dismiss.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT........................................................................................1

STATEMENT OF FACTS..........................................................................................2

    I.     QVC's Plan to Remove a Competitor..............................................2

    II.    The Sham Purchase Orders...........................................................4

    III.   QVC's Merger With HSN Creates a Monopoly..............................5

ARGUMENT.............................................................................................................6

    I.     Standard of Review.......................................................................6

    II.    QVC's Challenges to Plaintiffs' Specific Allegations of Intent Are Improper at This Stage of the Proceedings.......................................7

    III.   Plaintiffs' Amended Complaint Sufficiently States a Cognizable Section 2 Sherman Act Claim...........................................................8

          A.  Plaintiffs Sufficiently Set Forth a Claim for Monopolization and Attempted Monopolization Under Section 2 of the Sherman Act.........9

             i.     Plaintiffs' Amended Complaint Sufficiently Alleges a Plausible Relevant Market...............................................................10

                 a.  There is a Plausible Product Market............................10

                 b.  Plaintiffs Allege Sufficient Facts to Define a Plausible Geographic Market.............................................12

             ii.   QVC is in Possession of Monopoly Power....................................................................13

          B.  Plaintiffs have Pled an Antitrust Injury.......................................14

    IV.   Plaintiffs Allege Specific, Calculated Action by QVC to Defraud Plaintiffs and, Therefore, Counts V and VI of the Amended Complaint Should Not be Dismissed............................................................................14

          A.  Plaintiffs have pled every element of Fraud with specificity and consistent with Fed. R. Civ. P. 9(b)...............................................14

B.  The Gist of the Action Doctrine does not Bar Plaintiffs' Fraud Claim because QVC's alleged conduct violated broader social duties owed to all individuals…………………………………………………………………17

C.  Plaintiffs have pled sufficient facts to establish their Unfair Competition Claim pursuant to the California Business and Professions Code……………………………………………………………………….19

V.  Plaintiffs Have Set Forth QVC's Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL")……..............................................................................20

VI.  QVC Intentionally Interfered with Plaintiffs' Contract with Evine………..21

VII.  Plaintiffs Have Plead a Valid Alternative Claim for Promissory Estoppel..23

VIII.  Plaintiffs Set Forth Valid Claims for QVC's Violations of the UCC and Counts III and IV of the Amended Complaint Should Remain…………..24

A.  QVC Violated the Exclusive Dealings Provisions of Section 2-306 of the UCC…………………………….…...................24

B.  QVC Engaged in Anticipatory Repudiation of the Agreement in Violation of UCC Section 2-610…………………………………25

CONCLUSION………………………………………………………………….26

3500122v1
191601.65822

## **TABLE OF AUTHORITIES**

**Cases**

*Albee Homes, Inc. v. Caddie Homes, Inc.*, 207 A.2d 768 (Pa. 1965) ............................ 22

*Avenarius v. Eaton Corp.*, 898 F. Supp. 2d 729 (D. Del. 2012) ..................................... 14

*Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98 (3d Cir.1992) ...................... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 7

*Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp.2d 394 (E.D. Pa. 2002) ............................................................................................................... 23

*Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869 (3d Cir. 1995) ........................................ 13

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) .................................. 13

*Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014) ....................................................... 17, 18

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2002) ...................................... 6

*Caliber Partners, Ltd. v. Affeld*, 583 F. Supp. 1308 (N.D. Ill. 1984) ................................. 7

*CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, 357 F.3d 375 (3d Cir. 2004) ........................................................................................................................... 22

*CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612 (3d Cir. 2013) .......................... 23

*Cottman Transmission  Systems, Inc. v. Melody*, 869 F. Supp. 1180 (E.D. Pa 1994) ... 20

*Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129 (3d Cir. 1998) ...................................................................................................................... 9

*Crouse v. Cyclops*, 745 A.2d 606 (Pa. 2000) ............................................................... 23

*EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253 (3d Cir. 2010) ............................ 14

*Feldman & Pinto, P.C. v. Seithel*, 11-5400, 2011 WL 6758460 (E.D. Pa. 2011) ........... 21

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ................................................. 14

*FTC v. Penn State Hershey Medical Center*, 838 F.3d 327 (3d Cir. 2016) ...................... 9

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425 (3d Cir. 1993) .............................................................................................................................. 14

*HDC Medical, Inc. v. Minntech Corp.*, 474 F.3d 543 (8th Cir. 2007) ........................ 12, 13

*In re Riddell Concussion Reduction Litigation*, 121 F. Supp.3d 402 (D.N.J. 2015) ........ 22

*Jairett v. First Montauk Securities Corp.*, 203 F.R.D. 181 (E.D. Pa. 2001) .................... 15

*JML Industries, Inc. v. Pretium Packaging, Inc.*, 2007 WL 61061 (M.D. Pa. 2007) ........ 25

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171
Cal.App.4th 939 (Cal. 6th Cir. 2009) .......................................................... 20

*Keco Industries, Inc. v. Borg-Warner Corp.*, 334 F. Supp. 1240 (M.D. Pa. 1971) ........... 9

*Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. 2013) ................................ 18, 19

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.2d 937 (Ca. 2003) ........................ 20

*Kronfeld v. First Jersey National Bank*, 638 F. Supp. 1454 (D.N.J 1986) ....................... 7

*Lucas v. City of Philadelphia,* No. 11-4376, 2012 WL 1555430 (E.D. Pa. 2012) ............ 6

*Lutz v. Rakuten, Inc.*, 376 F. Supp.3d 455 (E.D. Pa. 2019) ...................................... 17

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ..................................... 7

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406 (3d Cir.
2003) ........................................................................................................... 14

*Norfolk Southern Railway Company v. Pittsburgh & West Virginia Railroad*, 870 F.3d
244 (3d Cir. 2017) ........................................................................................ 18

*Paduano v. Am. Honda Motor Co.*, 169 Cal.App.4th 1453 (2009) ............................... 21

*Pennsylvania Dental Ass'n v. Medical Service Ass'n of Pa.*, 745 F.2d 248 (3d Cir. 1984)
............................................................................................................................ 11

*Pepsi Co., Inc. v. Coca Cola, Co.*, 315, F.3d 101, 105 (2d Cir. 2002) ......................... 10

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) .................................... 8

*Playtronics, Inc.*, 967 F.Supp. 2d at 1087 ........................................................... 11

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) ................. 9

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) .................... 15

iv

*Schuylkill Energy Resources v. Pennsylvania Power & Light Co.*, 113 F.3d 405 (3d Cir. 1997) ................................................................................................................. 9

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir.1984)...... 14

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp.2d 380 (E.D. Pa. 2010) ..................................................................................... 20

*Skinner v. Switzer,* 562 U.S. 521 (2011)........................................................................... 7

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ................................................ 9

*Sullivan v. Chartwell Inv. Partners*, LP, 873 A.2d 710 (Pa. Super. 2005) ...................... 18

*Tigg v. Dow Corning Corp.,* 962 F.2d 1119 (3d Cir. 1992) ............................................. 24

*Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007)..................................................... 16

*Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715 (3d Cir. 1991) ........................... 12

*U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956) ........................................ 13

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ................................................... 11

*West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) ............... 8

**Statutes**

15 U.S.C. § 2 .................................................................................................................... 8
California Business and Professions Code § 17200 .................................................. 19, 20
California Business and Professions Code § 17500 ........................................................ 20
*Restatement (Second) of Torts* § 767 ............................................................................. 22
*Restatement (Second) of Torts* § 768 ............................................................................. 22
UCC § 2610 ..................................................................................................................... 25
UCC § 2-306(2) ............................................................................................................... 23
UCC § 2-306 .......................................................................................................... 2, 23, 24
UCC § 2-610 .................................................................................................................... 24

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6, 24
Fed. R. Civ. P. 9(b) .............................................................................. 1, 14, 15, 17, 19
Fed. R. Civ. P. 8(d)(2) .................................................................................................... 23
Fed. R. Civ. P. 8(d)(3) .................................................................................................... 23
Pa. R.C.P. 1020(c) .......................................................................................................... 23
Pa. R.C.P. 1020(d).......................................................................................................... 23

3500122v1
191601.65822

## PRELIMINARY STATEMENT

This case is about QVC's intentional acts in removing Plaintiffs as competitors so that QVC could advance and protect its monopoly.   Specifically, and as detailed in Plaintiffs' Amended Complaint:

> QVC had specific intent to monopolize the television programming nutritional supplement market and engaged in anticompetitive, exclusionary, and predatory conduct by falsely luring and inducing Plaintiffs into the sham Agreement and purchase orders so it could control the television programming nutritional supplement market by eliminating and excluding competition.

Amended Complaint [Dkt. 7] at ¶¶ 191 and 227.[1]

QVC's Motion to Dismiss is based upon an impermissibly narrow reading of the dispute between Plaintiffs and QVC, as well as an outright misstatement of Plaintiffs' claims.   QVC conveniently ignores Plaintiffs' specific allegations of intent in an effort to convince this Court to dismiss the Antitrust, Unfair Competition and Tort Claims in the Amended Complaint.   It is also improper for QVC to raise factual disputes regarding QVC's intentional conduct towards Plaintiffs.   QVC's Motion to Dismiss should be denied on this basis alone.

Turning to the substance, QVC's arguments also fail to pass muster.   Plaintiffs' Antitrust claims must remain as Plaintiffs' have set forth QVC's monopoly and Plaintiffs have sufficiently alleged a plausible relevant product and geographic market encompassing QVC's monopoly.   As set forth in the Amended Complaint, QVC controls nearly all direct response television programs in the nutritional supplement market.   ¶¶ 225-228.

---

[1] All citations to Plaintiffs' Amended Complaint shall be by paragraph number ("¶ __").  The Amended Complaint is attached hereto as Exhibit "1".

3500122v1
191601.65822

Moreover, Plaintiffs have sufficiently pled every element of fraud consistent with Rule 9(b).  Plaintiffs' claims are not barred by the Gist of the Action Doctrine because QVC's alleged conduct violated identified social duties owed to Plaintiffs.  Similarly, Plaintiffs sufficiently claim the elements necessary to establish an unfair competition claim under California Law; that QVC intentionally interfered with Plaintiffs' contract with Evine; and, in the alternative, Plaintiffs have set forth a claim for Promissory Estoppel. Furthermore, QVC's actions violate the Exclusive Dealings provisions of § 2-306 and QVC did engage in anticipatory repudiation of the Agreement.

For reasons set forth herein, QVC's Motion to Dismiss should be denied.

## STATEMENT OF FACTS

### I.      QVC's Plan to Remove a Competitor

Suzanne Somers and her Company, SLC, are and have been enormously successful in the business of providing health, wellness, and nutritional products to the public, including, but not limited to, dietary supplements. ¶¶ 8 – 12.  Immediately prior to February 1, 2017, Plaintiffs were providing their products in connection with agreements Plaintiffs had with Evine, another home shopping retailer.  *Id*.  QVC was aware of Plaintiffs' success in providing these products to the public.  In February 2017, QVC contacted Plaintiffs to lure Plaintiffs from Evine and to have Plaintiffs sell their products on QVC.  ¶¶ 2-14.

At the time QVC made this approach to Plaintiffs, QVC was the largest televised home shopping network in the United States, including being ahead of its main competitor, Home Shopping Network ("HSN").  QVC falsely represented to Plaintiffs that QVC was interested in marketing and selling Plaintiffs' products on QVC.  It was

2

misrepresented to Plaintiffs that QVC did not have a supplement business and was very interested in marketing and selling Plaintiffs' products on QVC.  ¶¶ 15-20.  Plaintiffs and QVC entered into an agreement dated March 21, 2017 (the "Agreement").  A copy of the Agreement is attached to the Amended Complaint as Exhibit "A".  ¶ 19.

QVC is a subsidiary of Liberty Interactive Corporation ("Liberty Interactive").  ¶ 5. At that time, Liberty Interactive also owned approximately 38% of HSN.  Prior to the date of the Agreement, Liberty Interactive, HSN and QVC were aware that Liberty Interactive was in the process of negotiating and agreeing to purchase the remaining approximately 62% of HSN.  One of the leading brand partners on HSN at that time was Andrew Lessman ("Mr. Lessman").  Mr. Lessman had an exclusive relationship with HSN where he was the only vendor allowed to sell supplements on the entire network.  ¶¶ 25-30.  At the time QVC merged with HSN, Mr. Lessman insisted that his exclusive contract as the only supplement vendor at HSN be extended to QVC, thereby forcing QVC to eliminate Ms. Somers as a vendor.  *Id.*

Mr. Lessman provided supplements to the customers of HSN to the same market Plaintiffs provided supplements to the customers of Evine.    Plaintiffs and Mr. Lessman were competitors in the television supplement market.  ¶¶ 31-33.  Prior to entering into the Agreement with Plaintiffs, Liberty Interactive, HSN and QVC were aware that the HSN acquisition was going to happen and that, as a result, QVC would now be able to partner with Mr. Lessman in order to enter into the supplement business.  *Id.*

QVC knew that Plaintiffs' successful presence in the direct response television supplement business would hinder QVC's future business relationship with Mr. Lessman. Too much was riding on Mr. Lessman's success.  Accordingly, QVC decided to eliminate

Plaintiffs as competitors.  ¶¶ 34-38.  To be clear:  prior to entering into the Agreement with Plaintiffs it was the intention of QVC, HSN and Liberty Interactive to eliminate and otherwise damage competitors to Mr. Lessman.  QVC took these actions to further enhance its monopoly in the television supplement market. *Id.*

Prior to entering into the Agreement, QVC misrepresented to Plaintiffs that QVC did not have other plans for television programming nutritional supplements for sale to the public.  QVC made other representations to Plaintiffs in order to lure Plaintiffs to QVC. QVC had no intention of fulfilling these representations but was only interested in removing Plaintiffs as competitors to QVC's monopoly.  ¶¶ 42-47.  For example, QVC misrepresented to Plaintiffs that Plaintiffs would be receiving significant airtime in order to market and sell SLC's products on QVC.   This was false as QVC had no intention of providing significant airtime to Plaintiffs.   QVC misrepresented to Plaintiffs that QVC would be purchasing significant product from SLC immediately upon the signing of the Agreement.  This representation was also false, as QVC had no intention of purchasing these products from SLC. ¶¶ 39-45.   QVC also made misrepresentations relating to projected sales.  ¶¶ 48-50.

## II.    The Sham Purchase Orders

Attached to the Parties' Agreement is a Form Purchase Order that was incorporated into the Agreement (the "Form Purchase Order").   Exhibit "B" to Amended Complaint.   The parties agreed that only the Form Purchase Order would be used by QVC when QVC ordered products from Plaintiffs.   Under the Agreement, QVC had no right to alter the terms of the Form Purchase Order.   Unbeknownst to Plaintiffs, at the time

3500122v1
191601.65822

of signing, QVC had no intention of honoring the Agreement or the Form Purchase Order. ¶ 24.

Upon the signing of the Agreement, QVC immediately issued Purchase Orders for the purchase of multiple products from SLC.   Exhibit "C" to Amended Complaint (hereinafter, the "March 2017 Purchase Orders").   In violation of the parties' Agreement, QVC significantly and fraudulently altered the terms of the Form Purchase Order that had been agreed to by the parties.   ¶¶ 52-53.   QVC's actions amount to fraud in the execution.  ¶¶ 61-68.

Upon committing this fraud, QVC used the terms set forth in the March 2017 Purchase Orders, and subsequent purchase orders, as a purported basis for the improper rejection of products that QVC ordered from Plaintiffs.  QVC ordered products, allowed the products to be manufactured and then improperly rejected the products after the products couldn't be sold because of expiration dates.   ¶¶ 61-68.   By intentionally delaying its improper rejection of these products, QVC saddled SLC with hundreds of thousands of dollars' worth of product for which SLC had already paid.   Moreover, because of QVC's improper actions, SLC could not mitigate its damages.  ¶¶ 89-102.

III.    **QVC's Merger With HSN Creates a Monopoly**

On July 6, 2017 (shortly after signing the Agreement with Plaintiffs), Liberty Interactive (QVC's and HSN's parent) announced that it was purchasing the remaining approximately 62% stake in HSN.  In making the announcement, it was stated that HSN would operate under the control of QVC.  The merger of HSN and QVC created by far the largest direct response television products sales company in the world.   Liberty Interactive and QVC needed to assure that this merger would be successful.  ¶¶ 69-72.

5

The merger of HSN with QVC was done in order to enable QVC to create a monopoly. The HSN merger was also completed in order to permit QVC to gain control of major brands, such as Mr. Lessman's supplement products.  ¶¶ 93-95 and 103-107.

Having solidified its monopoly, on January 17, 2019, QVC formally advised SLC and Ms. Somers that QVC would not be moving forward with Ms. Somers in supplement shows and it would no longer promote SLC's supplements.  Having removed Plaintiffs as competitors, QVC was now able to sell supplement products provided by Mr. Lessman and his companies without competition.  It is not a coincidence that Mr. Lessman's supplement products appeared on QVC.com within weeks of QVC's improper dismissal of Plaintiffs.  It was only after QVC's improper dismissal of Plaintiffs in January 2019 that Plaintiffs became aware that it was always QVC's plan to sabotage Plaintiffs' television supplement business so that HSN and QVC could promote and enable Mr. Lessman to more successfully sell his products.  QVC's plan to remove Plaintiffs as competitors, enabled QVC's monopoly on television supplement business to grow.  This was done to benefit QVC and Mr. Lessman, and to harm Plaintiffs.  ¶¶ 108-117.

## **ARGUMENT**

### I.     **Standard of Review.**

Pursuant to Rule 12(b)(6), QVC bears the burden of demonstrating that Plaintiffs failed to set forth a claim from which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Lucas v. City of Philadelphia,* No. 11-4376, 2012 WL 1555430 (E.D. Pa. 2012). In evaluating this motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to Plaintiffs. *Buck v. Hampton Twp. Sch.*

6

*Dist.,* 452 F.3d 256, 260 (3d Cir. 2002).  A complaint need only state "a plausible 'short and plain' statement of the plaintiff's claim."  *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).   To survive a motion to dismiss, Plaintiffs "need only allege 'enough facts to state a claim to relief that is plausible on its face'".  *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 45 (2011) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

## II.     QVC's Challenges to Plaintiffs' Specific Allegations of Intent Are Improper at this Stage of the Proceedings

QVC improperly challenges Plaintiffs' specific allegations of intent in arguing that Counts V (Unfair Competition Under California's UCL); Count VI (Fraud); Count VII (Promissory Estoppel); Count VIII (Intentional Interference with Contractual Relations) and Count IX (Sherman Anti-Trust) should be dismissed.  First, Defendant completely ignores the specific allegations in Plaintiffs' Amended Complaint where Plaintiffs set forth QVC's intentional actions and omissions.  *See,* ¶¶ 24, 39, 43, 45, 60, 62, 90, 91, 96, 97, 98, 108, 109, 110, 159, 170, 176, 180, 182, 189, 191, 192, 202, 203, 208, 216, 221, 227.

Second, challenges to Plaintiffs' claims that QVC acted with intent are not grounds for dismissing a cause of action at the Motion to Dismiss stage.  Plaintiffs need not allege facts showing that QVC knew it was misleading when it made misleading statements; general allegations of knowledge and intent are adequate under the federal rules. *Caliber Partners, Ltd. v. Affeld,* 583 F. Supp. 1308, 1311 (N.D. Ill. 1984); *see also, Kronfeld v. First Jersey National Bank,* 638 F. Supp. 1454, 1465-66 (D.N.J 1986).  To require a plaintiff to plead such matters, which are peculiarly within the Defendant's knowledge, would impose an impermissible burden. *Caliber,* 583 F. Supp. at 1311.

7

In light of the foregoing pleading standards, Plaintiffs' allegations and factual support set forth in the Amended Complaint are sufficient to maintain the causes of action alleged. Accordingly, QVC's Motion to Dismiss Counts V, VI, VII, VIII, and IX should be denied. QVC's challenges to these claims also fail for the reasons set forth below.

### III.   Plaintiffs' Amended Complaint Sufficiently States a Cognizable Section 2 Sherman Act Claim.

Section 2 of the Sherman Act declares unlawful "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce …." 15 U.S.C. § 2. Although QVC's motion falsely claims otherwise, *Twombly* does not impose a heightened pleading standard on antitrust claims. *Twombly*, 550 U.S. at 569 n.14. In *Twombly*, "the Supreme Court held that to satisfy Rule 8, a complaint must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible." *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). However, "[t]his 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *UPMC*, 627 F.3d at 98 (*quoting Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). Indeed, "it is inappropriate to apply *Twombly's* plausibility standard with extra bite in antitrust and other complex cases." *Id.*

8

### A. Plaintiffs Sufficiently Set Forth a Claim for Monopolization and Attempted Monopolization Under Section 2 of the Sherman Act.

Under Section 2 of the Sherman Act, a plaintiff must allege the following to state a claim for monopolization: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 141 (3d Cir. 1998) (*quoting Schuylkill Energy Resources v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 412–13 (3d Cir. 1997) *cert. denied*, 522 U.S. 977 (1997)). With respect to <u>attempted monopolization</u> under Section 2 of the Sherman Act, a plaintiff must show: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Crossroads Cogeneration Corp.*, 159 F.3d at 141 (*quoting Schuylkill*, 113 F.3d at 413); *see also Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 111 (3d Cir. 1992); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) (predatory or unfair conduct may be sufficient to prove the necessary intent to monopolize). "In contrast to the offense of 'monopolization,' it is said that in order to claim and prove 'attempted monopolization' there must be a 'dangerous probability' of a monopoly … together with overt acts committed in furtherance thereof within a relevant market… with the specific intent of the person charged to achieve the unlawful goal of monopoly power." *Keco Industries, Inc. v. Borg-Warner Corp.*, 334 F. Supp. 1240, 1245 (M.D. Pa. 1971)(internal citations omitted).

i.      **Plaintiffs' Amended Complaint Sufficiently Alleges a Plausible Relevant Market.**

Defining the relevant market is essentially a matter of resolving factual issues. *FTC v. Penn State Hershey Medical Center*, 838 F.3d 327, 335 (3d Cir. 2016); and *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (explaining that "in most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers"). The relevant market consists of a relevant <u>product</u> and <u>geographic</u> market. *See Pepsi Co., Inc. v. Coca Cola, Co.*, 315, F.3d 101, 105 (2d Cir. 2002).

QVC mischaracterizes Plaintiffs' Amended Complaint and distorts the reality of QVC's core platform in a desperate attempt to try and define a very broad product market definition that disingenuously focuses on an "e-commerce platform." This Court should also disregard the unsupported factual allegations within QVC's motion.

### a.   There is a Plausible Product Market.

Notwithstanding QVC's misplaced focus on evidentiary burdens, the relevant market in this case is much narrower and relates to <u>the television programming nutritional supplement market</u>, which QVC controls. ¶¶ 227-28. As the Amended Complaint tells us, "QVC possesses and controls nearly all of the television programming nutritional supplement market". ¶ 228. Moreover:

> QVC had specific intent to monopolize the television programming nutritional supplement market and engaged in anticompetitive, exclusionary, and predatory conduct by falsely luring and inducing Plaintiffs into the sham Agreement and purchase orders so it could control the television programming nutritional supplement market by eliminating and excluding competition.

¶ 227.

QVC's own documents, including the very means which QVC employs in its scheme to restrain competition, ensure its monopoly and mask its fraudulent and predatory conduct.   The Agreement that is the subject of this action recognizes the relevant market in this case.  In this regard, the Agreement provides:

> [SLC] grants to QVC … the <u>exclusive</u> right in the United States, Canada, Mexico, United Kingdom, Germany, Italy, France, Japan, and China … to Promote the Products through Direct Response Television Programs.
>
> [Ms. Somers] grants to QVC … the <u>exclusive</u> right … to Promote the Products through Direct Response Television Programs.
>
> "Direct Response Television Programs" shall mean … QVC's televised retail shopping programs.

Agreement at pp. 1-2 (emphasis added).  <u>In other words, QVC has defined the market</u>.

Courts also recognize that "it is appropriate to limit a market to a discrete channel of distribution so long as it is shown, using established market-definition criteria, that enough customers do not view other methods of distribution as viable substitutes to the distribution method in question." *Playtronics, Inc.*, 967 F. Supp. 2d at 1087.  Discovery must place on this question of fact.

To solidify its monopoly, the Agreement binds Plaintiffs to a non-competition provision that applies directly to <u>Direct Response Television Programs</u>, which, again, is QVC's defined market.  Agreement at p. 6.  The disingenuous nature of QVC's attack on the relevant market in this case is best exemplified by the fact that QVC's predatory contract expressly recognizes the relevant market outlined in Plaintiffs' Amended Complaint.  QVC's predatory contracts are specially designed to restrain competition and ensure QVC's monopolistic control over the television programming nutritional supplement market at issue.

3500122v1
191601.65822

### b. Plaintiffs Allege Sufficient Facts to Define a Plausible Geographic Market

Like the relevant product market, the relevant geographic market is an evidentiary question.  *See Pennsylvania Dental Ass'n v. Medical Service Ass'n of Pa.*, 745 F.2d 248, 260 (3d Cir. 1984), *cert. denied*, 471 U.S. 1016 (1985).  "The relevant geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks."  *Id.* (*citing United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).  QVC's motion ignores "the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product."  *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 726 (3d Cir. 1991).

Here, the relevant geographic market is identified in QVC's own documents, namely, its predatory contract which expressly admits and recognizes the relevant market.  Agreement at pp. 1 and 6.  More specifically, the geographic market is the direct response television programming market for nutritional supplements where the primary means of deriving revenue is the transmission of "direct response television programs" which QVC identified in its predatory contract as HSN, EVINE Live, and Jewelry Television.  *Id.*  Since QVC has acquired HSN and Jewelry Television does not sell nutritional supplements, the relevant geographic market whereby customers would look to buy nutritional supplements in response to direct television programming is simply QVC/HSN and EVINE Live.  *See id.*  And QVC controls nearly all of this market. ¶ 225-28.

Notwithstanding the adequacy of Plaintiffs' Amended Complaint, QVC's challenge to the geographic market is premature as the "proper market definition can be

12

determined only after a factual inquiry into the commercial realities faced by consumers." *Domino's Pizza, Inc.*, 124 F.3d at 435.

### ii.    QVC is in Possession of Monopoly Power.

As part of its motion, QVC again focuses on evidentiary proofs and improperly interjects unsupported factual allegations. "To establish that a defendant possesses the requisite market power required for monopolization liability, a plaintiff must establish that the defendant has a dominant market share in a well-defined relevant market." *HDC Medical, Inc. v. Minntech Corp.*, 474 F.3d 543, 547 (8th Cir. 2007). A party has monopoly power if it has "a power of controlling prices or unreasonably restricting competition." *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389 (1956).

QVC controls nearly the entire television programming nutritional supplement market. ¶¶ 225-228. QVC lured Plaintiffs from EVINE with false promises in order to restrict a would-be competitor—Plaintiffs—from competing in the television programming nutritional supplement market. ¶¶ 14, 41, 158, and 171. This blatant restraint on trade is precisely what Section 2 of the Sherman Act was designed to protect against. Moreover, since QVC has a significant share and virtual control over the television programming nutritional supplement market, there are barriers to entry some of which QVC itself creates (i.e. predatory contract), including QVC's unwillingness to deal with competitors. *See UPMC*, 627 F.3d at 103-04.

To the extent QVC does not already have a monopoly power, QVC has certainly come dangerously close to monopolizing the television programming nutritional supplement market. ¶ 228. "Dangerous probability" is enough to establish an antitrust claim. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007). In any

13

event, courts should not "resolve this question at the pleading stage 'unless it is clear on the face of the complaint that the 'dangerous probability' standard cannot be met as a matter of law.'" *Id.* (*quoting Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d Cir. 1995)).

### B. Plaintiffs have Pled an Antitrust Injury.

"To establish antitrust injury, a plaintiff must show; (1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff that flows from that which makes the defendant's acts unlawful." *Avenarius v. Eaton Corp.*, 898 F. Supp.2d 729, 736 (D. Del. 2012) (*citing Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 429 (3d Cir. 1993)).

Plaintiffs' Amended Complaint alleges that QVC through fraudulent, predatory, and unfair scheme removed Plaintiffs from the television programming nutritional supplement market which thereby successfully reduced competition by removing a competitor from the relevant market.  ¶¶ 227, 229-30.  Unquestionably, "[c]onduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way may be deemed anticompetitive." *Qualcomm Inc.*, 501 F.3d at 308.  The Antitrust claim must remain.

### IV. Plaintiffs Allege Specific, Calculated Action by QVC to Defraud Plaintiffs and, Therefore, Counts V and VI of the Amended Complaint Should Not be Dismissed.

#### A. Plaintiffs have pled every element of Fraud with specificity and consistent with Fed. R. Civ. P. 9(b).

"The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n. 2 (3d Cir 2003).  Thus, to comply with Rule 9(b), a complaint must state "the

3500122v1
191601.65822

circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)[2]. Notably, the Third Circuit Court of Appeals has rejected strict application of Rule 9(b). *See, Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 786 (3d Cir. 1984); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). Thus, Plaintiffs will satisfy Rule 9(b) so long as they "inject[] precision and some measure of substantiation into their allegations of fraud." *Rolo*, at 658.

Instantly, the facts pled by Plaintiffs establish every element of fraud.   These include: in February, 2017, QVC contacted Plaintiffs to lure them away from a competitor, Evine; QVC provided false forecasts about the amount of product Plaintiffs could sell, and the amount of airtime that Plaintiffs would be allowed; QVC represented that it would be purchasing significant product from SLC; QVC altered the terms of the Agreement by substituting purchase orders that were not agreed upon by the parties, and which contained additional restrictions on Plaintiffs' product; QVC used the restrictions from the altered purchase orders, and other false criteria, to improperly reject much of Plaintiffs' product, knowing that the product would expire and become unsalable; and Plaintiffs have incurred damages in the form of lost product and revenue and damage to Plaintiffs' brand as a direct result of QVC's fraudulent actions. ¶¶ 14, 16, 19, 41-42, 52-58, 64-65, 71, 82-87, 99, 104-106, 204.

---

[2] Under Pennsylvania law, fraud claims require the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 275 (3d. Cir. 2010).

QVC's attacks on the fraud claim fail because Plaintiffs' fraud claim is predicated upon QVC's wrongful conduct at the time of the representations, and not QVC's future performance.   The District Court dismantled a similar argument in *Jairett v. First Montauk Securities Corp.*, 203 F.R.D. 181 (E.D. Pa. 2001) (statement of present intention which is false when uttered may constitute fraudulent misrepresentation of fact, and thereby satisfy the first element of fraud cause of action).

QVC challenges Plaintiffs' allegations sounding in fraud in the execution by attempting to justify QVC's *ex post facto* changing of the purchase orders by claiming that the Agreement "did not state that *only* the form purchase order, without any changes, could be submitted". (QVC Brief, p. 17).  This false assertion is contrary to the plain language in Section 2(a) of the Agreement:

> From time to time, QVC may issue to Company a purchase order, the current form of which is attached hereto as Exhibit "A" and incorporated herein by reference (any such purchase order, as may be issued from time to time, is hereinafter referred to as a "Purchase Order".)  Hereafter, any purchases of Products by QVC shall be made according to the terms set forth in this Agreement and on any such Purchase Order(s). …

Thus, the Agreement attaches and incorporates a specific purchase order, defines "Purchase Order" in reference to this document, and states in mandatory language that "any purchases of Products by QVC *shall be* made according to the terms set forth in this Agreement and *on any such Purchase Order*(s)". (*emphasis added*.)

QVC's integration argument also fails for multiple reasons.  First, the extensive fraudulent scheme detailed in the Amended Complaint concerns conduct that took place both before and after the execution of the Agreement, and thus sounds in both fraud in the inducement and fraud in the execution.  In *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007), the Supreme Court of Pennsylvania held that "when fraud in the execution is

alleged, representations made prior to contract formation are not considered superseded and disclaimed by a fully integrated written agreement". *Id*. at 53.   Thus, QVC's fraudulent misrepresentations prior to signing the Agreement survive in this action.   Moreover, on the very same page of its brief where QVC argues that the Agreement was complete and integrated, QVC takes the contradictory position that it had the right to change purchase orders – and thereby change terms of the Agreement between the parties – at any time.   QVC cannot "have it both ways" on this point.

On the issue of intent, QVC conspicuously ignores that Rule 9(b)'s specificity requirements do not apply to the element of intent: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).   *See*, *Lutz v. Rakuten, Inc.*, 376 F. Supp.3d 455, 475 (E.D. Pa. 2019) (J. Kenney) (denying Motion to Dismiss challenging fraud action under Fed. R. Civ. P. 9(b), holding that "the facts pertaining to … the requisite knowledge or intent … only need to be pled generally.") Regardless, under any standard, Plaintiffs have detailed a host of intentional acts taken by QVC that demonstrated its intent to defraud Plaintiffs for the purpose of eliminating QVC's competition, not the least of which was QVC's surreptitious change in the terms of the purchase orders after execution of the Agreement.

The specific facts alleged demonstrate that QVC caused Plaintiffs' lost revenue and brand harm include, *inter alia*, that QVC's used the fraudulent purchase order to impose baseless restrictions on Plaintiffs' products and reject Plaintiffs' product, and caused Plaintiffs to lose significant portions of their perishable product.   Moreover, that QVC intentionally limited Ms. Somers' exposure to her customer base, and restricted

the advertising language that could be used, which diminished Plaintiffs' brands. ¶¶ 110, 111 and 204.

> **B.    The Gist of the Action Doctrine does not Bar Plaintiffs' Fraud Claim because QVC's alleged conduct violated broader social duties owed to all individuals.**

When applying the gist of the action doctrine, a court must make a duty-based inquiry to determine whether the claim is in tort or contract. *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 106 A.3d 48 (Pa. 2014).   If "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort". *Id*. at 68. In *Bruno*, the Supreme Court of Pennsylvania took care to underscore that "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim ... as one for breach of contract." *Id*. at 69.   Indeed, the Third Circuit confirmed that a Plaintiff can recover under both a breach of contract theory and fraudulent misrepresentation arising out of the same series of dealings. *See*, *Norfolk Southern Railway Company v. Pittsburgh & West Virginia Railroad*, 870 F.3d 244 (3d Cir. 2017) (affirming that lessor was liable for both breach of lease contract and fraud, and that the fraud action was not barred by the gist of the action doctrine, *citing Bruno*).

Pennsylvania Courts (and Federal Courts applying Pennsylvania law) recognize fraud claims between parties to a contract in a variety of circumstances. *See*, *Sullivan v. Chartwell Inv. Partners, LP,* 873 A.2d 710 (Pa. Super. 2005) (gist of the action doctrine did not bar fraud claim where defendant represented it would perform obligations that it never intended to perform in order to induce plaintiff into contract); *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. 2013) (gist of the action doctrine did not warrant

dismissal of fraud and consumer protection claims because contract was collateral to alleged false advertisements, statements, and assurances relied upon by plaintiff prior to signing the contract).

Instantly, the gist of the action doctrine does not bar Plaintiffs' fraud claim because QVC's alleged conduct violated broader social duties owed to all individuals. As in *Sullivan*, Plaintiffs have alleged that QVC made numerous, material misrepresentations about obligations that QVC had no intention of performing in order to induce Plaintiffs to enter into the business arrangement.  This was followed by QVC engaging in additional fraudulent conduct to ensure that Plaintiffs were locked into the dead-end deal, all in order to remove a competitor from the supplement market.  These allegations go beyond mere contractual duties.  Plaintiffs' fraud claim against QVC arises out of QVC's breach of social and legal duties against anti-competitive and unfair trade practices, as well as the broader "duty of honesty imposed by society".  *See*, *Knight*, *supra* (denying motion to dismiss under the gist of the action doctrine, where fraud claims related to business practices declared unlawful under state law, misstatements about certifications required by background regulatory law, and dishonest statements made during the course of a business relationship to induce further performance).  This is reinforced by the fact that Plaintiffs have claims against QVC in Counts V and IX based upon anti-competitive and unfair trade practices under the Sherman Act and the California Business and Professions Code.  Accordingly, Plaintiffs' action for fraud against QVC set forth in Count VI is not barred by the gist of the action doctrine.

19

### C. Plaintiffs have pled sufficient facts to establish their Unfair Competition Claim pursuant to the California Business and Professions Code.

QVC's sole argument to dismiss Plaintiffs' Unfair Competition Claim for violation of California Business and Professions Code § 17200 *et seq.* in Count V is that such an action requires pleading the elements of fraud as required under Rule 9(b), incorporating the arguments mentioned above[3].  For the reasons already discussed, Plaintiffs' Amended Complaint alleges facts sufficient to establish the elements of fraud. Therefore, QVC's argument to dismiss Count V is baseless, and should be denied.

### V.   Plaintiffs have Set Forth QVC's Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

Section 17200 of the UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts.  The UCL covers a wide range of conduct." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.2d 937, 943 (Ca. 2003); *see also K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal.App.4th 939, 961 (Cal. 6th Cir. 2009) ("[a] business practice... may be unfair or fraudulent in violation of the UCL even if the practice does not violate any law").  Section 17200 of the UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices,' and its broad language also allows 'a practice [to be] deemed unfair even if not specifically proscribed by some other law.'" *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp.2d 380, 406 (E.D. Pa. 2010) (*citing Lockheed Martin Corp.*, 63 P.3d at 943).  Moreover, "[b]ecause the statute is written in the disjunctive, it is violated where a defendant's act or practice

---

[3] The elements of a cause of action for fraud under California law and Pennsylvania law are "virtually identical." *Cottman Transmission  Systems, Inc. v. Melody*, 869 F. Supp. 1180, 1186 (E.D. Pa. 1994).

20

is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements). Each prong of the UCL is a separate and distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for relief." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

QVC focuses solely on its fraudulent conduct. In this regard, QVC summarily maintains that Plaintiffs' Amended Complaint fails to set forth their fraud based UCL claim with sufficient specificity. Notwithstanding QVC's glaring omission of the *unlawful* and *unfair* conduct which serve as separate and independent grounds for a UCL violation, as set forth herein, Plaintiffs have sufficiently detailed the basis for their fraud-based claims against QVC. Furthermore, "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides." *In re Riddell Concussion Reduction Litigation*, 121 F. Supp.3d 402, 422 (D.N.J. 2015) (*quoting Paduano v. Am. Honda Motor Co.*, 169 Cal.App.4th 1453 (2009)). The UCL claim should also remain.

## VI.   QVC Intentionally Interfered with Plaintiffs' Contract with Evine.

Count VIII should not be dismissed as QVC interfered with Plaintiffs' contract with Evine. Plaintiffs accurately allege that: 1) Plaintiffs had an existing contract with Evine; 2) QVC intended to harm that existing relationship: 3) QVC's actions were not privileged or justified; and 4) Plaintiffs were harmed. *Feldman & Pinto, P.C. v. Seithel*, 11-5400, 2011 WL 6758460 (E.D. Pa. 2011). Plaintiffs allege "QVC approached Plaintiffs purposefully intending to harm Plaintiffs' relationship with Evine by luring Plaintiffs from Evine under false pretenses and eliminating her as a major competitor in the home shopping market." ¶ 216.

QVC knew it was going to combine with HSN and that it needed to eliminate a competitor for QVC's new spokesman, Andrew Lessman.  ¶¶ 217, 218 and 219. Moreover, as set forth at ¶ 220 of the Amended Complaint:

> QVC had no legitimate justification or privilege to interfere with Plaintiffs' contractual relationship with Evine in an effort to further QVC's plan to eliminate Ms. Somers from the home shopping market, specifically when QVC knew its acquisition of HSN would give them exclusive sales control of Mr. Lessman and his line of dietary supplements.

¶ 220.

QVC's argument fails because, under Pennsylvania law, inducing a party to leave their present contractual arrangement is actionable when the purpose of such enticement is to cripple and destroy an integral part of a competitive business organization. *CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, 357 F.3d 375 (3d Cir. 2004) (*quoting Albee Homes, Inc. v. Caddie Homes, Inc.*, 207 A.2d 768, 771 (Pa. 1965)).  QVC's interference is particularly actionable as QVC employed "wrongful means" to lure Plaintiffs.  "Wrongful means" is defined as the use of fraud or fraudulent misrepresentations.  *Restatement (Second) of Torts* § 767, Cmt. "c".  The Restatement further provides that a defendant's interference is improper if defendant's conduct is intended to illegally restrain competition.  *Id.* at § 768, Cmt. "f".

Plaintiffs' Amended Complaint includes detailed factual allegations of QVC's deployment of intentional interference by means considered "wrongful" and the harm QVC's conduct caused Plaintiffs.  ¶¶ 216 and 221.  Plaintiffs would not have ended their relationship with Evine, nor would SLC have ordered and paid for $1.3 million of inventory, much of which became unusable, expired, and could not be resold because

of QVC's unlawful actions.  ¶¶ 209, 210.  QVC's Motion to Dismiss Count VIII should be denied.

## VII.    Plaintiffs Have Pled a Valid Alternative Claim for Promissory Estoppel

To maintain an action in promissory estoppel, Plaintiffs must show that: 1) QVC made a promise that QVC, not Plaintiffs should have reasonably expected to induce action of forbearance on the part of the Plaintiffs; 2) Plaintiffs actually took action or refrained from taking action in reliance on QVC's promise; and 3) injustice can be avoided only by enforcing the promise.  *See CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 634 (3d Cir. 2013).  As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute.  *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp.2d 394, 407 (E.D. Pa. 2002) (*citing Crouse v. Cyclops*, 745 A.2d 606, 610 (Pa. 2000)).

Under both the Federal and Pennsylvania Rules of Civil Procedure, parties are permitted to set out two or more statements of a claim alternatively and if a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.  Fed. R. Civ. P. 8(d)(2); Pa. R.C.P. 1020(c); 1020(d).  Moreover, a party may state as many separate claims it has, regardless of consistency.  Fed. R. Civ. P. 8(d)(3).  Here, the allegation (in the alternative) is that there is no valid contract because QVC had no intention of fulfilling its promises and was only looking to remove a competitor from the dietary supplement market."  ¶ 208.  QVC's Motion to Dismiss Count VII should be denied.

3500122v1
191601.65822

**VIII.  Plaintiffs Set Forth Valid Claims for QVC's Violations of the UCC and Counts III and IV of the Amended Complaint Should Remain**

**A.  QVC Violated the Exclusive Dealings Provisions of Section 2-306 of the UCC.**

Under the UCC, in an exclusive dealing for goods, the seller is obligated to use best efforts to supply the goods and the buyer is obligated to use best efforts to promote the sale of the goods.  UCC §2-306(2).  From the time the parties here executed the Agreement on March 21, 2017 to the end of the parties' relationship, Plaintiffs were compelled to provide all its dietary supplement product supply that was intended for the home shopping space <u>exclusively</u> to QVC.  ¶ 136 and Agreement at ¶¶ 1 and 5. Paragraph 5 of the Agreement is entitled "<u>Non-Compete</u>" and it means what is says. From March 21, 2017 to the end of the parties' relationship, per the Agreement, Plaintiffs were prohibited from selling, promoting, advertising or endorsing its products in the Territory through Direct Response Television Programs.  ¶ 137.  QVC exclusively received all of Plaintiffs' dietary supplement product supply and ultimately failed to use its best efforts to promote the sale of Plaintiffs' products.  ¶ 138.

QVC incorrectly argues that the Agreement was not exclusive because Plaintiffs were permitted to sell dietary supplements outside the Territory as defined in the Agreement.  In support, QVC cites only to *Tigg v. Dow Corning Corp.,* 962 F.2d 1119 (3d Cir. 1992).[4]  However, the Court in *Tigg* determined that there was an exclusive dealings contract where, like here, other avenues to sell plaintiff's products were severely restricted.  *Id.* at 1125-26.  Additionally, QVC's argument that the Agreement at issue was not exclusive because Plaintiffs could sell products outside the Territory

---

[4] Again, QVC relies on an opinion proffered by the Third Circuit after a jury verdict was rendered, which has no applicability in a Rule 12(b)(6) context prior to any discovery being taken.

likewise fails because the plain language of the explanatory comment of Section 2-306 of the UCC accounts for a limited geographic scope, as is the case here.  The Comment reads in relevant part, "[t]he principal is expected under such an [exclusive] contract to refrain from supplying any other dealer or agent *within the exclusive territory.*" (emphasis supplied).  UCC 2-306, Official Cmt. 5.  QVC's Motion to Dismiss Count III should be denied.

**B. QVC Engaged in Anticipatory Repudiation of the Agreement in Violation of UCC Section 2-610 of the UCC.**

QVC again completely ignores the allegations in the Amended Complaint.  The Amended Complaint alleges that QVC expressed an absolute refusal to perform.  After QVC took all steps to damage Plaintiffs and remove them as competitors to Mr. Lessman, on "January 17, 2019, QVC formally advised SLC and Ms. Somers that allegedly due to poor results, QVC would not be moving forward with Ms. Somers in supplement shows and it would no longer promote SLC's supplements."  ¶ 113. Further, "QVC's clear communication that it would not continue with performance of the Agreement constitutes a repudiation and anticipatory repudiation of the Agreement." ¶ 118.  *See also*, ¶¶ 140-46.  QVC also applies the incorrect standard.  *See JML Industries, Inc. v. Pretium Packaging, Inc.,* 2007 WL 61061 (M.D. Pa. 2007) (under Pennsylvania UCC § 2610, anticipatory breach occurs whenever there is "action which reasonably indicates a rejection of the continuing obligation").  Accordingly, QVC's Motion to Dismiss Count IV must be denied.

3500122v1
191601.65822

## **CONCLUSION**

QVC's motion ignores the specific and detailed allegations in the Amended

Complaint.  The motion should be denied.

Respectfully submitted,

**MacELREE HARVEY, LTD.**

Date:   February 24, 2020       By:     _/s/ Robert A. Burke_____
Robert A. Burke, Esquire
Attorney I.D. No. 61268
Patrick J. Gallo, Jr., Esquire
Attorney I.D. No. 316092
Brian J. Forgue, Esquire
Attorney I.D. No. 322783
17 West Miner Street
West Chester, PA  19381-0660
(610) 436-0100
Email:  rburke@macelree.com
        pgallo@macelree.com
        bforgue@macelree.com

_Attorneys for Plaintiffs, SLC Sweet, Inc._
_and Suzanne Somers_

26