# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

SUZANNE SOMERS, and SLC SWEET, INC.,

    *Plaintiffs*,

v.

QVC, INC.,

    *Defendant*.

Civil Action No. 2:19-cv-04773-CFK

JURY TRIAL DEMANDED

## ORDER

IT IS HEREBY ORDERED AND ADJUDGED, on this _____ day of _____, 2020, having found sufficient basis for the motion, the Court grants the motion and directs the following: (1) Plaintiffs' attorneys — and not company employees — shall collect and review potentially relevant data; (2) Plaintiffs shall forensically image, collect and review the data of individual computers and mobile devices for Plaintiffs' five custodians; and (3) Plaintiffs shall answer the list of specific questions referenced in the moving papers within five days of the issuance of this Order.

It is FURTHER ORDERED that Plaintiffs shall pay the attorneys' fees and costs incurred by QVC, Inc. in connection with this Motion. QVC shall submit a Bill of Costs no later than 14 days from the date of this Order.

BY THE COURT,

_____
CHAD F. KENNEY, JUDGE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE SOMERS, and SLC SWEET, INC., *Plaintiffs*, v. QVC, INC., *Defendant*. | Civil Action No. 2:19-cv-04773-CFK  JURY TRIAL DEMANDED |

## DEFENDANT QVC, INC.'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH THE COURT'S ELECTRONIC DISCOVERY ORDER

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant QVC, Inc. moves this Court for an order compelling Plaintiffs' compliance with this Court's Electronic Discovery Order, dated May 8, 2020. In support of this motion, QVC relies on and incorporates the accompanying memorandum.

2

Dated: July 10, 2020　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　/s/ *Edward J. Sholinsky*
　　　　　　　　　　　　　　　　　　　Edward J. Sholinsky (Pa. I.D. No. 206561)
　　　　　　　　　　　　　　　　　　　Schnader Harrison Segal & Lewis LLP
　　　　　　　　　　　　　　　　　　　1600 Market Street, Suite 3600
　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103-7286
　　　　　　　　　　　　　　　　　　　(215) 751-2000

　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　Richard B. Harper (admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　Alyssa Pronley (admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　BAKER BOTTS LLP
　　　　　　　　　　　　　　　　　　　30 Rockefeller Plaza
　　　　　　　　　　　　　　　　　　　New York, New York 10112-4498
　　　　　　　　　　　　　　　　　　　(212) 408-2500

　　　　　　　　　　　　　　　　　　　Erik T. Koons (admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　Elisa Beneze (admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　BAKER BOTTS LLP
　　　　　　　　　　　　　　　　　　　700 K Street, N.W.
　　　　　　　　　　　　　　　　　　　Washington, D.C. 20001-5692
　　　　　　　　　　　　　　　　　　　(202) 639-7700

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUZANNE SOMERS, and SLC SWEET, INC., *Plaintiffs*, v. QVC, INC., *Defendant*. | Civil Action No. 2:19-cv-04773-CFK<br><br>JURY TRIAL DEMANDED |

### MEMORANDUM IN SUPPORT OF DEFENDANT QVC, INC.'S MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH THE COURT'S ELECTRONIC DISCOVERY ORDER

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant QVC, Inc. ("QVC" or "Defendant"), by and through its undersigned counsel, hereby submits this Motion to Compel requesting that the Court require Plaintiffs Suzanne Somers and SLC Sweet, Inc. (together "Plaintiffs") to comply with this Court's Order Governing Electronic Discovery, dated May 8, 2020 (the "Electronic Discovery Order") [Docket No. 27] and award QVC the attorneys' fees and costs it incurred in connection with this motion.

### Preliminary Statement

Plaintiffs' failure to comply with the Electronic Discovery Order threatens the discovery schedule set by the Court and prevents QVC from obtaining relevant discovery. This Court's Electronic Discovery Order provides an effective process for the parties' collection, review, and production of electronic data. However, after three meetings of the parties' counsel regarding that process, there remain numerous fundamental questions that Plaintiffs have not answered — and what information Plaintiffs' counsel has disclosed is disturbing.

Plaintiffs revealed that Suzanne Somers's daughter-in-law (an SLC employee) is "spearheading" the collection, review and selection of relevant documents for production (and is being assisted by other, unidentified SLC employees). Moreover, Plaintiffs have not disclosed anything about the methodology these employees are using to review the documents. And, although Plaintiffs claim that they are reviewing "individual computers" and "mobile devices," they have repeatedly failed to identify any of those devices (by custodian, brand or any other identifying information). As a result, despite entry of the Electronic Discovery Order in May, QVC is no closer in July to learning even the basics of what Plaintiffs are doing with electronic data (with a fact discovery deadline set for early October).

This Court should enter an Order compelling Plaintiffs to comply with the Electronic Discovery Order in the following respects:

1. <u>Direct Plaintiffs' Attorneys — and not company employees — to collect and review potentially relevant data</u>. Aside from a general statement that Plaintiffs' employees are culling and selecting what they decide is relevant information, there has been literally no disclosure as to Plaintiffs' search methodology in violation of Paragraph 5 of the Electronic Discovery Order. Plaintiffs' violation creates a palpable danger that self-serving errors or misconduct will occur during their document review.

2. <u>Direct Plaintiffs to forensically image, collect and review the data of individual computers and mobile devices for Plaintiffs' five custodians</u>. Given the violation of Paragraph 5 of the Electronic Discovery Order above — including Plaintiffs' failure to identify whether an SLC-used server captured copies of all e-mails during the relevant time period — the forensic imaging and review will increase the likelihood of capturing Plaintiffs' relevant information.

3. <u>Direct Plaintiffs to answer a list of specific questions mandated by the Electronic Discovery Order</u>. Who are the SLC employees and representatives conducting the review of Plaintiffs' electronic data? What specific devices were used by Plaintiffs' five custodians during the relevant period, and what data on those devices is being reviewed? Did the SLC e-mail server account at Intermedia preserve all e-mails sent or received by the five custodians during the relevant time period? During the relevant time period, who had access to the SLC Dropbox account (and who is reviewing the data contained in the account for relevance)? Plaintiffs' failure to answer these questions is a violation of the Electronic Discovery Order.

Ordering this relief specifically tailored to the facts before the Court will ensure that Plaintiffs satisfy the terms of the Electronic Discovery Order and increase the likelihood that discovery deadlines in the case are met.

**Factual and Procedural Background**

This case arises from and is driven by a commercial contract Plaintiffs entered into with QVC for the sale and promotion of health supplements and wellness products on QVC's home shopping platforms.  *See* Amended Complaint ("Am. Compl.") [Docket No. 7].  Plaintiffs' theory of the case is that unnamed QVC employees (somehow with knowledge of a future acquisition by QVC's parent company of HSN months before completing negotiations and signing an agreement) fraudulently conspired to lure Plaintiff SLC into a vendor contract that QVC never intended to perform solely as a means to drive SLC out of business.  *Id.* at ¶¶ 24, 33.  Plaintiffs have asserted nine causes of action, ranging from breach of contract to business torts to federal antitrust violations.  *Id.* at ¶¶ 121-231.

On May 7, this Court held a Rule 16 Conference.  At the Rule 16 Conference, the Court entered the Scheduling Order, dated May 8, 2020, [Docket No. 26] that set a fact discovery deadline of October 7, 2020 and a trial date of July 9, 2021.

Following the Rule 16 Conference, on May 8, 2020, this Court entered an Order Governing Electronic Discovery (the "Electronic Discovery Order") [Docket No. 27].  The Order required that, by May 28, 2020, the parties exchange information such as "a list of each relevant electronic system that has been in place at all relevant times."  Critically, the Electronic Discovery Order specifically addresses the exchange of information regarding "search methodology," including the disclosure of a specific methodology if a party is *not* going to use search terms:

3

> If a party intends to use any other methodology for searching for relevant electronic documents, the party shall disclose the methodology used *in detail* and any restrictions as to scope and method which might affect its ability to conduct a complete review of the electronic documents.

Electronic Discovery Order at ¶ 5 (emphasis added). Finally, Paragraph 6 of the Electronic Discovery Order contains a paragraph devoted to the "timing of e-discovery" productions to ensure that discovery is completed promptly and efficiently.

Since the entry of the Electronic Discovery Order, the parties have met by telephone in May and June to exchange information regarding electronic discovery (in addition to many e-mails on the subject). *See* Exhibit A (a series of e-mails between R. Harper and R. Burke, dated June 12, 2020 through June 29, 2020). What Plaintiffs' counsel disclosed and could not disclose during these three meetings is the basis for this motion.

### Legal Standard

Rule 37(b)(2)(A) provides, in relevant part: "If a party . . . fails to obey an order to provide or permit discovery. . ., the court where the action is pending may issue further just orders." Courts have consistently held that failure to comply with a court's discovery order is the proper subject of a motion to compel and grounds for that court to impose sanctions. *In re Fine Paper Antitrust Lit.*, 685 F.2d 810, 823 (3d Cir. 1982); *Dunn v. Warhol*, No. CIV. A. 91-4169, 1993 WL 149991, at *1 (E.D. Pa. May 10, 1993).

Consistent with Rule 37 and Local Rule 26.1, QVC's counsel have made a good-faith effort to resolve these issues with Plaintiffs without the Court's involvement through numerous e-mails and multiple meetings. However, now that it has been more than 60 days since entry of the Electronic Discovery Order, QVC requests that this Court order Plaintiffs to comply with this Court's Electronic Discovery Order.

**Argument**

I.  **This Court should order Plaintiffs' attorneys — and not its employees (or a relative of a named plaintiff) — to collect and review relevant data for production.**

Plaintiffs' counsel has admitted that Plaintiffs are having an employee of SLC — who is Plaintiff Suzanne Somers's daughter-in-law — lead other SLC employees and representatives in collecting and reviewing data for relevance and responsiveness. More specifically, QVC has summarized the admission to Plaintiffs' counsel as follows:

> Consistent with your custom and practice as litigation counsel, SLC's President (Caroline Somers) has (in communication with you) spearheaded the effort by unidentified SLC employees and representatives to collect data from the SLC e-mail server at Intermedia and perhaps individual custodian computers and mobile devices. SLC's President (and perhaps the unidentified SLC employees/representatives) reviewed the data and provided what she deemed to be the responsive e-mails/electronic files for SLC custodians.

*See* Exhibit A (June 29, 2020 e-mail from R. Harper to R. Burke).[1] Despite repeated requests, Plaintiffs' counsel has offered no further information regarding this search process, the computers being searched or the SLC employees conducting the review.

Federal courts and commentators have consistently warned for decades about the dangers of having employees of a party responsible for collecting, reviewing and making relevance determinations for discovery document productions. *See Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012) (noting that "most custodians cannot be 'trusted' to run effective searches because designing legally sufficient electronic searches" is not part of their responsibilities); *Jones v. Bremen High School Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *7 (N.D. Ill. May 25, 2010) (finding it unreasonable to allow a party's interested employees, who have the ability to permanently delete unfavorable e-mails, to review documents because employees are "often reluctant to reveal their

---

[1] As of July 10, 2020, Plaintiffs have not responded to or taken issue with this summary.

5

mistakes or misdeeds"); Sheila Mackay, *How Dangerous is Self-Collection in E-Discovery?* (July 30, 2012), https://insights.conduent.com/conduent-blog/how-dangerous-is-self-collection-in-e-discovery (discussing how the *Nat'l Day Laborer* case "comes on the heel of a series of cases demonstrating why companies ought not to rely on their employees to collect data…"). This is because using an employee-driven data collection, review and production process raises an unacceptable likelihood that relevant documents will not be produced, and that discovery misconduct may take place. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 630 (D. Colo. 2007) (finding that simply accepting whatever documents or information might be produced by employees, without validating the accuracy or completeness of the documents, was improper); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 92 (D.N.J. 2006) (finding defendant's response to discovery requests "utterly inadequate" where defendant relied on specified business people within the company to search and turn over whatever documents they thought were responsive, resulting in the non-production of numerous highly relevant documents). That risk is reinforced here where Plaintiffs have failed to answer which SLC employees are doing what — other than to disclose that a relative of one of the named Plaintiffs is "spearheading" the effort. *See* Exhibit A at 1-2. This violates Paragraph 5 of the Electronic Discovery Order, which requires that if "a party intends to use any other methodology for searching for relevant electronic documents, the party shall disclose the methodology used *in detail*." Given the data review process Plaintiffs have put in place and the lack of information about it, this Court should direct Plaintiffs to have attorneys (and not company employees) organize and conduct the review and production of potentially relevant electronic data.

II.  **This Court should order Plaintiffs to forensically image, collect and review the data of individual computers and mobile devices for Plaintiffs' five custodians.**

QVC has repeatedly asked Plaintiffs' counsel whether, in light of the process described above, they will image and review the individual computers and mobile devices of the five SLC custodians. *See* Exhibit A at 2.  In connection with the imaging request, QVC's counsel has asked whether SLC's server captures a copy of each e-mail SLC custodians sent or received during the relevant time period.  *See id.*  If the SLC server fails to do so, this fact could also impact the need to image the individual computers and mobile devices.  Plaintiffs have not answered either of these questions to date.

Given the violation of Paragraph 5 of the Electronic Discovery Order above — including Plaintiffs' failure to identify whether an SLC-used server captured copies of all e-mails during the relevant time period — the forensic imaging will increase the likelihood of Plaintiffs capturing and producing Plaintiffs' relevant information.

III.  **This Court should order Plaintiffs to answer a list of specific electronic discovery questions that are consistent with and mandated by the Electronic Discovery Order.**

Plaintiffs' counsel has failed or refused to answer a series of questions consistent with and required by the Electronic Discovery Order.  These questions include:  Who are the SLC employees and representatives conducting the review of Plaintiffs' electronic data?  *See* Exhibit A at 2 (June 29, 2020 e-mail from R. Harper to R. Burke); Electronic Discovery Order ¶ 5 (requiring parties to disclose in detail the methodology they intend to use in searching for relevant electronic documents and any restrictions as to scope and method).  What specific devices were used by Plaintiffs' five custodians during the relevant period, and what data on those devices is being reviewed?  Did the SLC e-mail server account at Intermedia preserve all e-mails sent or received by the five custodians during the relevant time period?  *See* Exhibit A at 2

7

(June 29, 2020 e-mail from R. Harper to R. Burke); Electronic Discovery Order ¶ 2(b) (requiring parties to exchange a list of each relevant electronic system in place at all relevant times and a general description of each system, including the nature, scope, character, organization and formats employed in each system). During the relevant period, who had access to the SLC Dropbox account (and who is reviewing the data contained in the account for relevance)? *See* Exhibit A at 2 (June 29, 2020 e-mail from R. Harper to R. Burke); Electronic Discovery Order ¶ 2(b) (requiring parties to exchange a list of each relevant electronic system in place at all relevant times and a general description of each system). QVC has raised all of these questions with Plaintiffs multiple times since the parties' first meet and confer on electronic discovery (with the exception of questions about the Intermedia e-mail server account and the Dropbox account, both of which Plaintiffs disclosed only later in the meet and confer process).

Each of the above-referenced questions is consistent with the specific requirements of the Electronic Discovery Order. Moreover, responding to these questions imposes almost no burden on Plaintiffs given that they too need to gather this information in order to proceed with electronic discovery. Plaintiffs should answer each question as soon as possible so that the parties can determine if any additional electronic discovery collection and production issues exist.

## Conclusion

For all of these reasons this Court should grant QVC's motion and award QVC its attorneys' fees and costs for bringing this motion.

Dated: July 10, 2020                                 Respectfully submitted,

/s/ *Edward J. Sholinsky*
Edward J. Sholinsky (Pa. I.D. No. 206561)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2000

and

Richard B. Harper (admitted *Pro Hac Vice*)
Alyssa Pronley (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2500

Erik T. Koons (admitted *Pro Hac Vice*)
Elisa Beneze (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001-5692
(202) 639-7700

## **ATTORNEY CERTIFICATION OF GOOD FAITH**

We, counsel for Defendant QVC, Inc. hereby certify and attest as follows:

On May 8, 2020, the Court entered an e-discovery order directing parties to disclose certain information by May 28, including a list of most likely custodians of relevant materials, a list of each relevant electronic system in place during the relevant time period, the name of the person responsible for the party's document retention policies, a general description of the party's electronic document retention policies, the name of the party's e-discovery liaison, details about search methodology, and any other pertinent information about electronic documents.

Parties exchanged letters on May 28 providing basic information about their respective discovery plans. In the following weeks, we made numerous attempts to understand Plaintiffs' collection and review process, including who they identified as custodians, what information was being reviewed, and where potentially relevant information was stored. The parties also had three meet & confers on May 29, June 11 and June 25, 2020 to discuss e-discovery issues.

Through the course of our discussions with Plaintiffs, QVC's counsel developed a list of six specific questions that we asked Plaintiffs about on numerous occasions. Rich Harper followed up with Plaintiffs' counsel by e-mail on June 12, June 18, and June 23 without receiving concrete answers or substantive information from Plaintiffs' counsel in response. Plaintiffs' counsel did eventually provide QVC's counsel with the name of five custodians, a vague summary of their collection and review process, and alerted us to the fact SLC used both an e-mail server hosted by Intermedia and a Dropbox account. However, at the June 25 meet & confer, Plaintiffs' counsel could not provide additional information about the Intermedia or Dropbox accounts, specifically what kind of documents were stored on the Intermedia server and who had access to the Dropbox account. Rich Harper followed up on these issues in his June 29

e-mail, but Plaintiffs have failed to respond or offer any additional information.  *See* Exhibit A (June 29, 2020 e-mail from R. Harper to R. Burke).

Following QVC counsel's e-mail to Plaintiffs' counsel on June 29, 2020, it was clear the parties could not resolve this dispute themselves.  Despite counsels' good faith attempt to resolve this dispute, they have been unable to do so, and a genuine disagreement exists.

Dated: July 10, 2020

Certified to the Court by:

/s/ *Edward J. Sholinsky*
Edward J. Sholinsky (Pa. I.D. No. 206561)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2000

and

Richard B. Harper (admitted *Pro Hac Vice*)
Alyssa Pronley (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2500

Erik T. Koons (admitted *Pro Hac Vice*)
Elisa Beneze (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001-5692
(202) 639-7700

# EXHIBIT A

| | |
|---|---|
| **From:** | Harper, Rich |
| **Sent:** | Monday, June 29, 2020 6:50 PM |
| **To:** | Robert A. Burke |
| **Cc:** | ESholinsky@schnader.com; Pronley, Alyssa |
| **Subject:** | Re: SLC/QVC Litigation:   E-Discovery Follow-up [MH-Law.FID1360744] |
| **Attachments:** | image939210.png; image328703.png; image524371.png; image364929.png; image174965.png; image750839.png |

Bob,

The purpose of this e-mail is to follow-up on that portion of our June 25, 2020 meet and confer concerning SLC's e-discovery efforts.   We are now a month into discussions regarding those efforts.   We have had meet and confer calls on:  May 29, 2020; June 11, 2020; and, June 25, 2020.   We still lack even basic information about multiple aspects of SLC's efforts (in stark contrast to the software, custodian and other e-discovery information that QVC has provided).

**SLC's Collection and Review Methodology**

The Court's E-discovery Order at paragraph 5 states:  "If a party intends to use any other methodology for searching for relevant electronic documents, the party shall disclose the methodology used in detail and any restrictions as to scope and method which might affect its ability to conduct a complete review of the electronic documents."  Since a few minutes into our first meet and confer we have been trying to get an accurate and detailed description of SLC's methodology; the remainder of this e-mail tries a final time to get the answer.

In my e-mail of June 12, 2020, I summarized SLC's collection and review methodology (based on your meet and confer telephone comments) in this case:  "consistent with what you do in all your cases, SLC's President (Caroline [Somers]) has (in communication with you) collected data from individual custodian computers, reviewed the data and provided you with what she deemed to be the responsive e-mails/electronic files for SLC custodians."  You responded on June 23, 2020, that this was not "100% accurate."   During the June 25, 2020, meet and confer we walked through each portion of this statement and, based on that conversation, SLC's collection and review methodology can be summarized as:

**"Consistent with your custom and practice as litigation counsel, SLC's President (Caroline Somers) has (in communication with you) spearheaded the effort by unidentified SLC employees and representatives to collect data from the SLC e-mail server at Intermedia and perhaps from individual custodian computers and mobile devices.   SLC's President (and perhaps the unidentified SLC employees/representatives) reviewed the data and provided what she deemed to be the responsive e-mails/electronic files for SLC custodians."**

1

This "updated" description of SLC's collection efforts does not resolve questions about SLC's collection and review methodology.  QVC has made clear that using company employees and representatives to collect and review potential relevant discovery is unacceptable; however, at this point, we need to understand the details of the employee "spearheaded" efforts.

**Continuing Questions About SLC's Data and Its Collection and Review Methodology**

After our third meet and confer call, you can still not answer the following basic questions:

1.  What data is being reviewed?   You stated on the call that Caroline Somers (and unidentified SLC employees/representatives) are reviewing the e-mail accounts maintained on the SLC e-mail/server account at Intermedia for 5 custodians (Caroline Somers, Alan Hamel, Suzanne Comers, Julie Turkey, and Jill Schugardt).  Is any other data being reviewed?

2. On a related note, you have stated that individual custodian computers and mobile devices are being reviewed.   Which devices did the 5 custodians use during the relevant time period?  What happened to them?  If any have been replaced, were steps taken to place the old data on the new computer/device?   Regardless of the answers, please identify the individual computers and mobile devices — device by device — that (a) were used during the relevant time period and (b) the devices that SLC employees/representative are reviewing.

3. Is SLC going to image forensically the individual computers and mobile devices referenced above in order to search for relevant data?

4. Who is reviewing any data for the 5 custodians?  It is clear from your statements on the meet and confer that SLC's Caroline Somers is "spearheading" the effort, but you have also indicated that other SLC representatives/employees are involved in the review without being able to identify them.

5. Did the SLC e-mail server account at Intermedia preserve all e-mails sent or received from the 5 custodians during the relevant time period?

6. You have stated that there is an SLC Dropbox account and that it is being reviewed.   Who had access to that account during the relevant time period?

Every one of the questions above has been asked multiple times.   All of the questions have been asked since the first phone call — other than those regarding the SLC e-mail server account at Intermedia and Dropbox account, which SLC did not disclose until later in the meet and confer process.   Please answer these questions as soon as possible.

Best regards,

Rich

**Rich Harper | Baker Botts L.L.P. |** T +1.212.408.2675 **|** M +1.917.940.9589

On Jun 23, 2020, at 3:08 PM, Robert A. Burke <rburke@macelree.com> wrote:

**[EXTERNAL EMAIL]**

Rich,

Please see my responses in red, below.  Any questions, please let me know.

Thank you,

Bob


**Robert A. Burke, Esquire | MacElree Harvey, Ltd**
17 West Miner Street | West Chester, PA  19382
Direct: 610-840-0211 | Fax: 610-430-7885
**rburke@macelree.com**
**macelree.com**

**Legal Assistant: Ann Marie Romani**
Direct: 610-840-0212
**aromani@macelree.com**



This electronic transmission, and any attached document(s) and/or file(s), is confidential and/or legally privileged. It is intended for the sole use of the individuals to whom it is addressed. It is the responsibility of the recipient(s) of this electronic transmission to read and review any attached document(s) and/or file(s). If you received this message in error, please notify the sender and destroy the message and any attached document(s) and/or file(s) immediately. MacElree Harvey is not liable for any use or misuse contrary to these directions. Thank you.

**From:** Richard.Harper@BakerBotts.com <Richard.Harper@BakerBotts.com>
**Sent:** Friday, June 12, 2020 5:15 PM
**To:** Robert A. Burke <rburke@macelree.com>
**Cc:** ESholinsky@schnader.com; alyssa.pronley@bakerbotts.com
**Subject:** [EXTERNAL] SLC/QVC Litigation: E-Discovery Follow-up

Bob,

This is a follow-up to yesterday's meet and confer regarding e-discovery issues in order to list out the issues still on the table.  As I typed up the issues below, it became easiest to just refer to our "first call" (the meet and confer on May 29) and our "second call" (our second meet and confer yesterday).

**Issues with Respect to QVC's E-Discovery Collection/Production**

I proposed on May 29 the search terms, custodians and a date range QVC will use for collecting and producing documents responsive to SLC's document requests.  You'll circulate any counter-proposals for SLC so that QVC can consider and respond.   As we agreed on both calls, the sooner the better for any SLC counter-proposal because our plan continues to be to pull custodian electronic files and search them once we have an agreement (on at least search terms so we can pull for the custodians QVC proposed).

I sent you the search terms, custodians and date range.

**Issues with Respect to SLC's E-Discovery Collection/Production**

The following is the issues list from the first call with some updates from the second call — I've tried to consolidate it down to three:

1. <u>SLC's Collection Methodology</u>.  Because SLC does not have a large number of representatives, you've indicated that you aren't running search terms.   Instead, consistent with what you do in all your cases, SLC's president (Caroline Sommers) has (in communication with you) collected data from individual custodian computers, reviewed the data and provided you with what she deemed to be the responsive e-mails/electronic files for SLC custodians.  I've asked that it be lawyers who review the SLC data in the first instance, but regardless please provide more details on what data has been reviewed (e.g., has Caroline Somers reviewed documents other than e-mails) and the ongoing process you referenced yesterday.

    a. This isn't 100% accurate on what we discussed.  But I can confirm the following.  Per my May 28, 2020 correspondence to you, Plaintiffs will not be running search terms.  The electronic system that Plaintiffs and Plaintiffs' representatives have in place includes individual computers (and mobile devices) for the transmittal and receipt of electronic mail communications.  The e-mail is hosted at Intermedia.net.  It is run on the current version of Microsoft Exchange.  There are two separate accounts that are with Intermedia that have SLC files on them.  There contains non-SLC information on both these accounts, as well as SLC information.  Data is also housed on a Dropbox account for SLC.

2. <u>Custodians</u>.  On the first call, I believe you said SLC collected and reviewed the electronic files for five custodians.  As a follow-up to my ask on the first call, please identify the SLC representatives for whom you are and are not collecting and reviewing data, including both current and former employees or contractors.

    a. Plaintiffs have collected, and are in the process of continuing to collect, files from the Dropbox account and from the electronic files of Caroline Somers, Alan Hamel, Suzanne Somers, Julie Turkel and Jill Schugardt.

3. <u>The Computers/Servers Being Reviewed</u>.  On the first call, I asked if you could identify the specific computer/mobile devices being used by those custodians during the relevant time period and today (so that we can better understand the data reviewed and if computers have been replaced).  Please provide that information.  On the second call, you indicated that there are in fact two computer servers used by SLC representatives (one for Caroline Somers and one for

the other custodians).  Please identify the software used on the servers and let us know what, if any, plan you have to review those servers.

    a. <span style="color:red">See the answer to 1, above.</span>

One thing that I didn't follow up on yesterday, but have given some thought to overnight is that you said the latter server has unrelated information on it.  Is this a server the SLC shares with other companies?  If you could clarify that, I'd appreciate it.  Also, please confirm the time period in which SLC was using these during the entire relevant time period.  If they were not, please let us know what time period SLC was using these servers and how data was preserved from the time predating their use.  I think you told us that SLC doesn't have a formal document retention policy.  So, it will be helpful to know how SLC has preserved documents and data.

    a. <span style="color:red">The information for the relevant time period was, and still is, housed at Intermedia and Dropbox.  The files are maintained, preserved and not deleted.  The retention of these files will continue and will not be deleted.  The two e-mail accounts on Intermedia do contain files unrelated to SLC.  The Dropbox account also contains files unrelated to SLC.</span>

The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.