**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUZANNE SOMERS, and SLC SWEET, INC., <br>    *Plaintiffs*, <br><br> v. <br><br> QVC, INC., <br>    *Defendant*. | Civil Action No. 2:19-cv-04773-CFK <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF DEFENDANT QVC, INC.'S RENEWED MOTION TO COMPEL PLAINTIFFS' COMPLIANCE WITH THE COURT'S ELECTRONIC DISCOVERY ORDER**

This Court should compel Plaintiffs SLC Sweet, Inc. and Suzanne Somers to comply with this Court's Electronic Discovery Order. Pursuant to Rule 37 of the Rules of Civil Procedure (the "Rules"), Defendant QVC, Inc. ("QVC") renews its Motion to Compel requesting that the Court require Plaintiffs Suzanne Somers and SLC Sweet, Inc. (together "Plaintiffs") to comply with this Court's Order Governing Electronic Discovery, dated May 8, 2020 (the "Electronic Discovery Order") [Doc. No. 27] and award QVC the attorneys' fees and costs it has incurred in connection with this motion.

**Preliminary Statement**

Three months ago, this Court denied without prejudice QVC's motion to compel Plaintiffs to obey the Electronic Discovery Order and the Rules of Civil Procedure. Since that time, the stark differences between the parties' approaches to discovery have become even more acute. Plaintiffs' document custodian testified under oath that they incredibly put Defendant Suzanne Somers' daughter-in-law in charge of the document review and production process, who thereby tasked SLC's employees with searching their own documents for relevance. The exception to this activity is even more incredible: SLC put Suzanne Somers' husband in charge of running search terms against her e-mail account (without disclosing search terms or the process to QVC) and of reviewing his wife's e-mails for production. Plaintiffs' discovery collection and production strategy — brazenly continued after repeated warnings from and discussions with QVC counsel — falls far short of the requirement the Rules impose on Plaintiffs. QVC requests that the Court compel Plaintiffs to have their counsel redo the collection and review of Plaintiffs' potentially relevant electronic data and to forensically image, collect and review the data of individual computers and mobile devices for Plaintiffs' five custodians.

QVC comes to this Court with genuine reluctance, and only after bending over backwards with respect to its own document production efforts. QVC's e-discovery review process involved the review of 16 QVC and HSN custodians against 28 search terms over at least a 3-year period (after discussion with Plaintiffs). QVC employed more than 50 attorneys to review the resulting electronic data, and produced more than 80,000 pages (and much more by way of native spreadsheets). QVC produced documents from additional sources, ranging from shared drive documents to detailed sales data for nutritional supplement products. Plaintiffs' counsel has never issued a discovery deficiency letter as to what additional discovery they seek; instead, Plaintiffs' counsel is now incredibly arguing during and outside of depositions that it is effectively QVC's responsibility to identify any potentially relevant documents for any company employees with no regard to proportionality or reasonableness requirements in the Rules.

Unfortunately, Court intervention is necessary because there is such a fundamental disagreement as to what the Rules require of the parties; Court intervention now can ensure the parties remain on path towards any possible trial of the matter.

## Factual and Procedural Background

This case arises from and is driven by a commercial contract Plaintiffs entered into with QVC for the sale and promotion of health supplements and wellness products on QVC's home shopping platforms. *See* Amended Complaint ("Am. Compl.") [Doc. No. 7]. Plaintiffs' theory of the case is that unnamed QVC employees (somehow with knowledge of a future acquisition by QVC's parent company of HSN months before completing negotiations and signing an agreement) fraudulently conspired to lure Plaintiff SLC into a vendor contract that QVC never intended to perform solely as a means to drive SLC out of business. *Id.* at ¶¶ 24, 33. Plaintiffs

have asserted nine causes of action, ranging from breach of contract to business torts to federal antitrust violations. *Id.* at ¶¶ 121-231.

Pursuant to the Court's Amended Scheduling Order [Doc. No. 35], the Court set a fact discovery deadline for November 6, 2020 and a trial date of July 9, 2021.

On May 8, 2020, this Court entered an Order Governing Electronic Discovery (the "Electronic Discovery Order") [Doc. No. 27].  The Order required the parties to exchange "a list of each relevant electronic system that has been in place at all relevant times."  Critically, the Order specifically addresses the exchange of information regarding "search methodology," including the disclosure of a specific methodology if a party is *not* going to use search terms:

> If a party intends to use any other methodology for searching for relevant electronic documents, the party shall disclose the methodology used *in detail* and any restrictions as to scope and method which might affect its ability to conduct a complete review of the electronic documents.

Doc. No. 27 at ¶ 5 (emphasis added).  Finally, Paragraph 6 of the Order contains a paragraph devoted to the "timing of e-discovery" productions to ensure that discovery is completed promptly and efficiently.

The Order provides an effective process for the parties' collection, review, and production of electronic data.  But Plaintiffs refuse to comply with the Orders' disclosure requirements. Plaintiffs initially refused to disclose their methodology for collecting and reviewing documents, and then revealed that Suzanne Somers's daughter-in-law (SLC's president) was "spearheading" Plaintiffs' collection, review and selection of relevant documents for production.  At that point, QVC filed a motion to compel, arguing that even at that early point in discovery, Plaintiffs were set to proceed down the wrong path.  [Doc. No. 28]. Although the Court denied QVC's initial Motion without prejudice [Doc. Nos. 32], the revelations during

Plaintiffs' 30(b)(6) document custodian deposition necessitate Court intervention to prevent Plaintiffs' utter disregard for their discovery obligations.

Plaintiffs' document custodian revealed that Plaintiffs have doubled down and made a bad situation even worse. Caroline Somers, Plaintiff SLC's corporate designee and Plaintiff Suzanne Somers' daughter-in-law, testified under oath to the following examples of Plaintiffs' deficient document collection:

1. SLC used Intermedia Servers to host emails for its six employees for the past 7 to 10 years, yet SLC did not contact Intermedia Servers to review the ESI stored there for purposes of this litigation. *See* Somers at 44:14-45:13; 61:7-9, attached as Exhibit A;

2. Four SLC custodians, Alan Hamel, Caroline Somers, Jill Schugardt, and Julie Turkel reviewed their own e-mails for relevance under the supervision of Caroline Somers. *See* Ex. A at 55:6-58:25;

3. Suzanne Somers's husband, Alan Hamel, reviewed Suzanne's emails for relevance after running search terms that were not disclosed to or agreed upon by QVC's counsel. *See* Ex. A at 56:9-57:14; 59:1-10.

There is nothing proportional or reasonable about Plaintiffs' document collection efforts described above. By their own admission, Plaintiffs unequivocally failed to comply with the Federal Rules and the Court's Electronic Discovery Order for searching, reviewing, and producing documents. And while openly flouting the Rules and falling far short of the minimum requirements the Rules impose on SLC, Plaintiffs have relentlessly fought to hold QVC to a standard far beyond what the Rules or this Court require.

QVC has given Plaintiffs two 30(b)(6) document custodian depositions, and numerous emails and a detailed memorandum summarizing its efforts to search, review, and produce responsive non-privileged documents. And despite QVC's likelihood of success in opposing Plaintiffs' Motion to Compel additional discovery [Doc. No. 37], QVC conceded on several issues, albeit burdensome, to obviate judicial intervention [Doc. No. .39]. Nonetheless, Plaintiffs

still seek to impose a seemingly limitless proportionality and relevance standard untethered from the Rules and unreasonably burdensome to QVC.

Given that Plaintiffs have turned their own discovery into a literal family affair, QVC now reluctantly returns to this Court in an effort to remedy the situation and set a clear discovery path forward.

## Legal Standard

Rule 37(b)(2)(A) provides, in relevant part: "If a party . . . fails to obey an order to provide or permit discovery. . ., the court where the action is pending may issue further just orders." Courts have consistently held that failure to comply with a court's discovery order is the proper subject of a motion to compel and grounds for that court to impose sanctions. *In re Fine Paper Antitrust Lit.*, 685 F.2d 810, 823 (3d Cir. 1982); *Dunn v. Warhol*, No. 91-4169, 1993 WL 149991, at *1 (E.D. Pa. May 10, 1993).

Consistent with Rule 37 and Local Rule 26.1, QVC's counsel have made a good-faith effort to resolve these issues with Plaintiffs without the Court's involvement through numerous e-mails and multiple meetings. However, now that it has been more than 60 days since entry of the Electronic Discovery Order, QVC requests that this Court order Plaintiffs to comply with this Court's Electronic Discovery Order.

## Argument

I. **PLAINTIFFS' REVIEW VIOLATED THE ELECTRONIC DISCOVERY ORDER AND RULES OF CIVIL PROCEDURE.**

    A.    **This Court should order Plaintiffs' attorneys — and not its employees (or a relative of a named plaintiff) — to collect and review relevant data for production.**

Caroline Somers, Plaintiffs' 30(b)(6) corporate designee — who is Plaintiff Suzanne Somers's daughter-in-law — testified that she, Julie Turkel, and Jill Schugardt each reviewed

5

their own emails for responsive documents, under Caroline's supervision, and that Alan Hamel independently searched his own emails for responsive materials. *See* Ex. A at 57:19-58:25.

> **Q.** What was the methodology SLC used for searching for relevant electronic documents other than with respect to Suzanne?
>
> **A.** I went through every single e-mail communication during the relevant time period in my sent and received e-mails, one by one, with anything that had to do with any part of the QVC business and I placed in the Dropbox account for my attorney's review. In addition, I went through all of my documents and added those to the Dropbox. My understanding is that he wanted everything. I then met with my team of Julie and Jill. I had my IT director present who set up the Dropbox account on both of their computers and instructed them to go through every single communication or document or spread sheet and place it into the Dropbox. They each had a file and I over saw them doing it that first day and they continued that process on their own until it was complete.
>
> . . . .
>
> **Q.** Please continue with your answer if you're not finished.
>
> **A.** I then had Dave Henson go to Suzanne Somers and Alan Hamel's home and he set up the Dropbox account on Alan's computer and I instructed Alan to go through every single communication, he only works in e-mail, and I asked him to put every single e-mail that had to do with QVC. I instructed him to keep every e-mail even if it was unflattering or embarrassing, I instructed him to keep them, which he did. It made his eyes blurry, he complained a lot, but he did it. And he then went through Suzanne's account. Suzanne was less involved with the e-mail at -- for QVC and it was more efficient to use search terms on her computer to gather any relevant QVC e-mail.

*Id.* at 55:5-56:25.

Even more alarming, Caroline Somers testified that Alan Hamel reviewed the emails of his wife, Plaintiff Suzanne Somers, for responsiveness.

> **Q.** And Alan searched Suzanne Somers' e-mail account and documents for any responsive materials, correct?
>
> **A.** Yes.
>
> **Q.** And for Suzanne, he used a series of –

6

>    **A.**   I would like to say that she was present, but Alan was a little more technical savvy, but she was present when he reviewed her computer for those documents.

*Id.* at 59:1-10.

Federal courts and commentators have consistently warned for decades about the dangers of having employees of a party responsible for collecting, reviewing and making relevance determinations for discovery document productions. *See Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012) (noting that "most custodians cannot be 'trusted' to run effective searches because designing legally sufficient electronic searches" is not part of their responsibilities); *Jones v. Bremen High School Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *7 (N.D. Ill. May 25, 2010) (finding it unreasonable to allow a party's interested employees, who have the ability to permanently delete unfavorable e-mails, to review documents because employees are "often reluctant to reveal their mistakes or misdeeds"); Sheila Mackay, *How Dangerous is Self-Collection in E-Discovery?* (July 30, 2012), https://insights.conduent.com/conduent-blog/how-dangerous-is-self-collection-in-e-discovery (discussing how the *Nat'l Day Laborer* case "comes on the heel of a series of cases demonstrating why companies ought not to rely on their employees to collect data…").

This is because using an employee-driven data collection, review and production process raises an unacceptable likelihood that relevant documents will not be produced, and that discovery misconduct may take place. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 630 (D. Colo. 2007) (finding that simply accepting whatever documents or information might be produced by employees, without validating the accuracy or completeness of the documents, was improper); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 92 (D.N.J. 2006) (finding defendant's response to discovery requests "utterly inadequate" where defendant relied on specified business people within the company to search and turn over whatever documents

7

they thought were responsive, resulting in the non-production of numerous highly relevant documents).

Plaintiffs' document collection, review, and production, is irrefutably tainted because fact witnesses with personal, familial and financial interests in the outcome of the litigation decided what documents were relevant.  We cannot say whether they even know if certain documents were responsive because the document custodian did not know if any of the employees who collected their own document reviewed QVC's Requests for Production. *See* Ex. A at 60:1-61:1. As another example,  Caroline Somers testified to eleven search terms, provided and presumably decided by fact witness Alan Hamel, that each custodian supposedly used to collect his or her own emails. *Id.* at 57:1-18.  Plaintiffs had previously refused to disclose the search terms used to collect ESI, and did not allow QVC to review or agree to the search terms before the witnesses collected their own documents.

Plaintiffs' refusal to comply with the Electronic Discovery Order leaves significant room for error or shenanigans in Plaintiffs' production.   Given the data review process Plaintiffs have put in place, this Court should direct Plaintiffs to have attorneys (and not company employees) re-do the collection and review of Plaintiffs' potentially relevant electronic data.[1]

Given the violation the Electronic Discovery Order and likely failure to capture relevant and responsive e-mails, the forensic imaging will increase the likelihood that Plaintiffs capture and produce relevant information.

---

[1] Additionally, this Court should order Plaintiffs to forensically image, collect and review the data of individual computers, mobile devices, and Intermedia servers for Plaintiffs' five custodians, because Plaintiffs admit that they did not collect ESI from their backup servers.  *See* Ex. A at 61:7-9.

**II.     BY COMPARISON, QVC TIME AND AGAIN HAS STRIVED TO MEET THE REQUIREMENTS OF THE RULES, PROVIDE SLC COUNSEL WITH INFORMATION CONSISTENT WITH THOSE REQUIREMENTS, AND SAVE JUDICIAL RESOURCES FROM HAVING TO RESOLVE DISPUTE.**

QVC has undertaken costly and time consuming efforts to comply with its obligations to produce relevant and responsive documents under the Rules. To avoid judicial intervention, QVC has provided Plaintiffs with far more information about its document collection, search, review, and production efforts than is typical in the normal course of litigation.

During QVC's second 30(b)(6) document custodian deposition, QVC provided SLC's counsel with a memorandum outlining each step it too to search, review, and produce documents (summarized below). *See* memorandum, attached as Ex. B.

**QVC's Document Collection:** Following a meet and confer about document search parameters, QVC agreed to search 28 search terms against 16 custodians (11 from QVC and 5 from HSN). SLC did not object, or even respond to, QVC's proposed search terms. In a sign of good faith and to ensure a complete document collection QVC expanded the scope of 7 search terms and added one document custodian after noting that those terms received low document hits. QVC's document search and collection yielded the following results:

|  | Data collected from custodians | Documents after applying search terms |
|---|---|---|
| **QVC** | 400 GB | 76,446 documents |
| **HSN** | 478,537 documents | 41,981 documents |
|  | **TOTAL:** | **118,427 documents** |

**QVC's Document Review:** Before beginning its document review, QVC educated contract attorneys and attorneys from its counsels' law firms ("SHSL/BB attorneys") about the background of the case. Approximately 15 SHSL/BB attorneys did a first-level review of 35,141 documents that hit on three attorney custodians or four attorney names in the email header.

9

Simultaneously, a team of 40 contract attorneys did a first level review of the remaining documents in the database.

Next, a dozen SHSL/BB attorneys did a second-level review of all responsive, non-privileged documents.  The SHSL/BB attorneys then separated into two groups for the next phase: one group did a second level review of the privileged documents, and the other group did a second level review of documents marked "responsive requires redaction."  After the completion of that review, a small team of SHSL/BB attorneys did a "clean up" review of all remaining documents in the database to ensure that QVC produced every responsive, non-privileged document.  SHSL/BB attorneys also did a third and final review of the privileged documents to prepare QVC's privilege log.

To date, QVC has made 14 document production totaling 41,625 pages of QVC documents and 39,678 HSN documents.  It also has produced two different 30(b)(6) witnesses to testify about these efforts.  Nevertheless, Plaintiffs' counsel focused not on the efforts QVC and its outside counsel made, but fixated on each designee's personal knowledge and not the steps taken to educate them.  In essence, Plaintiffs attempted to transmogrify these 30(b)(6) depositions on document collection, review, and production efforts into freewheeling fact depositions far beyond what they noticed.

## Conclusion

For all of these reasons this Court should grant QVC's motion and award QVC its attorneys' fees and costs for bringing this motion.

Dated: October 23, 2020

Respectfully submitted,

/s/ *Edward J. Sholinsky*
Edward J. Sholinsky (Pa. I.D. No. 206561)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2000

and

Richard B. Harper (admitted *Pro Hac Vice*)
Alyssa Pronley (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2500

Erik T. Koons (admitted *Pro Hac Vice*)
Elisa Beneze (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001-5692
(202) 639-7700

**ATTORNEY CERTIFICATION OF GOOD FAITH**

We, counsel for Defendant QVC, Inc. hereby certify and attest as follows:

On May 8, 2020, the Court entered an e-discovery order directing parties to disclose certain information by May 28, including a list of most likely custodians of relevant materials, a list of each relevant electronic system in place during the relevant time period, the name of the person responsible for the party's document retention policies, a general description of the party's electronic document retention policies, the name of the party's e-discovery liaison, details about search methodology, and any other pertinent information about electronic documents.

Parties exchanged letters on May 28 providing basic information about their respective discovery plans.  In the following weeks, we made numerous attempts to understand Plaintiffs' collection and review process, including who they identified as custodians, what information was being reviewed, and where potentially relevant information was stored.  The parties also had three meet & confers on May 29, June 11 and June 25, 2020 to discuss e-discovery issues.

Through the course of our discussions with Plaintiffs, QVC's counsel developed a list of six specific questions that we asked Plaintiffs about on numerous occasions.  Rich Harper followed up with Plaintiffs' counsel by e-mail on June 12, June 18, and June 23 without receiving concrete answers or substantive information from Plaintiffs' counsel in response. Plaintiffs' counsel did eventually provide QVC's counsel with the name of five custodians, a vague summary of their collection and review process, and alerted us to the fact SLC used both an e-mail server hosted by Intermedia and a Dropbox account.  However, at the June 25 meet & confer, Plaintiffs' counsel could not provide additional information about the Intermedia or Dropbox accounts, specifically what kind of documents were stored on the Intermedia server and

who had access to the Dropbox account. Rich Harper followed up on these issues in a June 29 e-mail, but Plaintiffs have failed to respond or offer any additional information.

Following QVC counsel's e-mail to Plaintiffs' counsel on June 29, 2020, it was clear the parties could not resolve this dispute themselves. Despite counsels' good faith attempt to resolve this dispute, they have been unable to do so, and a genuine disagreement exists.

Since then, despite three custodian depositions and numerous phone calls and letters, the parties cannot agree on the fundamental issue of what discovery efforts are appropriate.

Dated: October 23, 2020

Certified to the Court by:

/s/ *Edward J. Sholinsky*
Edward J. Sholinsky (Pa. I.D. No. 206561)
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2000

and

Richard B. Harper (admitted *Pro Hac Vice*)
Alyssa Pronley (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2500

Erik T. Koons (admitted *Pro Hac Vice*)
Elisa Beneze (admitted *Pro Hac Vice*)
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001-5692
(202) 639-7700