IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE SOMERS, et al.,                : | CIVIL ACTION |
| *Plaintiffs*,                           : | |
|                                         : | |
| v.                                      : | |
|                                         : | |
| QVC, INC.,                              : | NO.  19-cv-04773 |
| *Defendant*.                            : | |

MEMORANDUM

**KENNEY, J.**                                                                      August 9, 2021

      This case concerns QVC's alleged monopolization of the direct response television programming market and exercise of control over the sale of nutritional supplements in that market in breach of QVC's obligations to Plaintiffs, Suzanne Somers and SLC Sweet, Inc. ("Plaintiffs").  Presently before the Court is Plaintiffs' Motion to Compel (ECF No. 57), which asks the Court to require Defendant QVC to produce documents that have been withheld based on the attorney-client privilege.  Plaintiffs claim that Defendant QVC is improperly hiding behind the attorney-client privilege to conceal its anticompetitive behavior.  Defendant QVC counters that these communications are protected under the joint-client privilege because they concern legal matters and are between wholly owned subsidiaries in the same corporate family.

    **I.**    **BACKGROUND**

      Plaintiffs allege that Defendant QVC and the Home Shopping Network ("HSN") have acted in tandem to control the sale of nutritional supplements in the direct response television programming market and eliminate competitor vendors in that market, including Plaintiffs.  *See generally* ECF No. 7.  The claimed monopoly began in July 2017, when QVC's parent, Qurate,

1

acquired HSN.  *Id.* ¶ 26.  Plaintiffs estimate that HSN and QVC together control 95 percent of the direct response television programming market.  *Id.*  Plaintiffs claim that after Qurate acquired HSN, QVC suppressed the sale of Plaintiffs' products to protect this illegal monopoly and advance the career of HSN's provider of nutritional supplements, Andrew Lessman.  *Id.*

In their Motion to Compel, Plaintiffs argue that QVC is withholding communications that are properly subject to disclosure under the pretext of attorney-client privilege.  Plaintiffs request that the Court order QVC to produce (1) withheld communications by and between Mr. Gassett, Esquire, (an HSN employee), and employees of QVC; and (2) withheld communications from QVC attorney, Mr. LaMonaca, Esquire, and employees of HSN.  Plaintiffs argue that HSN and QVC are separate entities and there is no basis for QVC to withhold these communications, as the attorneys were communicating with employees from a sister entity, not their respective clients.  Further, Plaintiffs argue that Mr. Gassett was not providing legal advice in the disputed communications.  Instead, he was providing advice to QVC on business matters.  The relevance of the documents is not disputed.

QVC responds that the communications are protected from disclosure by the joint-client privilege.  QVC argues that the interests of QVC and HSN are generally aligned as to all issues as wholly owned subsidiaries of the same parent company, and are also specifically aligned with respect to providing consistent advice to two large companies on a wide range of issues.  QVC points out that after the HSN acquisition closed, the QVC and HSN legal teams were consolidated into one legal department under the general counsel of QVC, HSN, and their parent Qurate.  QVC claims that this structure is enough to satisfy any requirement of aligned interests.  QVC and HSN also entered into an Affiliate Company Shared Services Agreement, which defines the shares "business operations" and "administrative services" for QVC and HSN to

include in-house legal services.  The Shared Services Agreement specifically states that "legal communications among and between them, including those made as a consequence of the Services Agreement, are made pursuant to a joint client/attorney client privilege."  QVC argues that this corporate structure and the Shared Services Agreement bring all the disputed communications under the protection of the attorney-client privilege.

QVC also rejects Plaintiffs' assertion that any of the communications at issue contain business advice.  QVC claims that, in all relevant communications, Mr. Gassett was providing legal advice on the vendors' proposed on-air statements under applicable federal regulations and otherwise analyzing contracts or performing similar legal duties.  Mr. LaMonaca, as QVC counsel, also provided solely legal advice regarding potential litigation issues relating to the SLC/Somers-QVC relationship.  Defendant also points out that Plaintiffs make broad claims about the disputed communications and have not specifically challenged any single e-mail of Mr. Gassett or Mr. LaMonaca.

Plaintiffs filed the instant Motion to Compel on May 4, 2021.  ECF No. 57.  Upon receipt of Plaintiffs' Motion, the Court ordered the parties to meet and confer to decide what documents the Court should review *in camera* in its consideration of the Motion and whether any additional discovery was necessary.  ECF No. 58.  On May 19, 2021, the parties jointly filed a stipulation in which they agreed to submit certain documents for *in camera* review by May 26, 2021 and that no further discovery or courtroom testimony was needed to complete the record on the attorney-client privilege issue.[1]  ECF Nos. 74 and 75.  QVC filed its Response in Opposition on May 12,

---

[1] The parties were not able to agree on all the documents for *in camera* review as the Plaintiffs believed that certain documents in addition to those agreed-to were necessary for the Court to rule on this motion.  *See* ECF No. 74.  The Court ordered the parties to produce all the documents with the agreed-to documents clearly segregated from the disputed documents.  ECF No. 76.  The Court has reviewed all the documents submitted for consideration.

2021.  ECF Nos. 72 and 73.  Plaintiffs filed their Reply on May 21, 2021 (ECF Nos. 77 and 78), and Defendant QVC filed a surreply on June 2, 2021.  ECF No. 80.

## II. JURISDICTION AND LEGAL STANDARD

The Court has jurisdiction over this matter under 28 U.S.C. § 1331 as it arises under the laws of the United States, and may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.[2]

A district judge exercises broad discretion in supervising discovery.  *Bowman v. Gen. Motors Corp.*, 64 F.R.D. 62, 69 (E.D. Pa. 1974).  Federal Rule of Civil Procedure 26 allows litigants to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1).  "Material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved [in] the litigation."  *Topol v. Tr. of Univ. of Pa.*, 160 F.R.D. 476, 477 (E.D. Pa. 1995).  The attorney-client privilege is an exception to this rule and protects relevant communications between attorneys and clients from disclosure.  *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861–62 (3d Cir. 1994).  For the attorney-client privilege to attach to a communication, it must be a communication made between privileged persons in confidence for the purpose of obtaining or providing legal assistance.  *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (internal citations omitted).  Communications between corporate clients and their attorneys and between in-house counsel and employees of the same corporate family can be privileged if all the elements are met.  *In re*

---

[2] As the Court has federal question and supplemental jurisdiction over this matter, the Court will apply the federal common law of attorney-client privilege. *See, e.g.*, *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 243 (W.D. Pa. 2007) (holding that protection from discovery in federal question cases is governed by federal common law); *see also* F.R.E. 501 (providing that the common law, as interpreted by the United States courts, governs a claim of privilege).  Since the Court also has diversity jurisdiction over this matter, it is possible that state common law could apply (*see* 246 F.R.D. at 243); however neither the Court nor the parties have noted any material difference between state and federal law as relevant here.

*Teleglobe Commc'ns Corp.*, 493 F.3d 345, 360–61 (3d Cir. 2007).  However, the attorney-client privilege doctrine is not "applied mechanically." *Id.* at 360.  Rather, the Court considers "whether according a type of communication protection is likely to encourage *compliance-enhancing* communication" between clients and their attorneys and facilitate the proper administration of the law. *Id.* at 361 (emphasis in original).  The party claiming privilege has the burden of proving it applies. *In re Processed Egg Products Antitrust Litigation*, 278 F.R.D. 112, 117–18 (E.D. Pa. 2011).

### III. DISCUSSION

#### A. Timeliness

As an initial matter, Defendant argues that Plaintiffs' Motion to Compel should be denied as procedurally improper because Plaintiffs waited several months after first learning of the issue to file their motion.  ECF No. 72 at 8.  Plaintiffs first challenged QVC's privilege log in late October 2020 and QVC responded with its basis for withholding the documents.  Plaintiffs replied on November 4, 2020 that they would file a motion but failed to do so before the end of the discovery period set by this Court.  Instead, Plaintiffs filed their Motion to Compel on April 28, 2021, only nine days before the Court's deadline to file summary judgment motions.

Defendant is correct that Plaintiffs' motion is tardy and has prejudiced the Court's ability to orderly manage this case.  However, the Court has broad discretion in supervising discovery and managing its docket, *see, e.g.*, *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982), and Federal Rule of Civil Procedure 37(a)(1), which allows a party to "move for an order compelling disclosure," does not provide a deadline for the filing of motions to compel.  Fed. R. Civ. P. 37(a)(1).  The Court will decide this motion on the merits.

#### B. The Attorney-Client Privilege

The joint-client or co-client privilege is an exception to the general rule that the attorney-client privilege is waived when privileged information is shared with a third party. *In re Teleglobe*, 493 F.3d at 362. The joint-client privilege can protect communications between employees of affiliated companies and a centralized in-house legal team from disclosure. *Id.* at 369. In *Teleglobe*, the Third Circuit recognized that "parent companies often centralize the provision of legal services to the entire corporate group in one in-house legal department." *Id.* Thus, when a company's in-house legal department represents both the parent and a subsidiary or subsidiaries on a matter of common legal interest, the corporate entities are in a joint-client relationship with the legal department. *Id.* However, two entities are not co-clients simply because of their corporate relationship. *See, e.g.*, *CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP,* No. CIV.A. 11-4753, 2013 WL 315716, at *4 (E.D. Pa. Jan. 28, 2013) (there is no "absolute rule" in applying the co-client privilege). A wide variety of circumstances are relevant to determining whether two or more parties intend to create a joint-client relationship. *In re Teleglobe*, 493 F.3d at 362. The party asserting the joint-client privilege must show both that the communication is a privileged attorney-client communication and that the clients share or shared a common legal interest. *See, e.g.*, Restatement (Third) of the Law Governing Lawyers §75(1) (2000) ("a communication of either co-client that otherwise qualifies as privileged . . . and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication").

For a communication to be protected by the attorney-client privilege, it must be (1) a communication, (2) made between an attorney and client, (3) in confidence, and (4) for the purpose of obtaining or providing legal assistance for the client. *Rhone-Poulenc*, 32 F.3d at 862. Because the application of the attorney-client privilege withholds relevant information from the

fact finder, the privilege is narrowly construed. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). For the attorney-client privilege to apply, the communication must be primarily or predominately of a legal character. *Id.*; *see also Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007) ("Where a lawyer provides non-legal business advice, the communication is not privileged."). Additionally, the clients must share a common legal interest. *In re Teleglobe*, 493 F.3d at 364; *see also Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 310 (D.N.J. 2008) (seller and buyer of seller's subdivision had sufficiently shared interests to extend the attorney-client privilege to transactional due diligence documents transmitted between them, even though seller and buyer were on opposite ends of the transaction).

QVC argues that because QVC and HSN are both wholly owned subsidiaries of Qurate, both companies have the same interests because "all of the duties owed to the subsidiaries flow back up to the parent," and "the only interest of a wholly owned subsidiary is in serving its parent." ECF No. 72 at 15 (citing *Teleglobe*, 493 F.3d at 366–67). QVC also claims that, since Qurate's acquisition of HSN, both HSN and QVC "operate functionally with one combined legal department." ECF No. 72 at 15–16. This is reinforced by their Shared Services Agreement, which provides that certain services would be shared among the Qurate subsidiaries, specifically recognizing joint legal representation among the companies. *Id.* Per QVC, because QVC and HSN share the interests of their parent corporation—ranging from consistent interpretation of contracts to avoiding legal liability arising from on-air product claims under federal regulations—the privilege protects both Mr. Gassett's and Mr. LaMonaca's advice and analysis in furtherance of those goals.

7

The Court disagrees. Nowhere in QVC's brief does it identify or explain how QVC has any interest whatsoever in "consistent interpretation" of contracts to which it is not a party, or how HSN has a legal interest in a sister entity complying with its contracts with third parties. Qurate—the parent company—undoubtedly has an interest in all its subsidiaries complying with their own contracts. However, there is no clear interest for sister companies to comply with each other's contracts; nor is it clear that Qurate has an interest in one subsidiary complying with another subsidiary's contract. The Court concludes that QVC has no cognizable legal interest in a contract between HSN and its vendor, just as Qurate has no legal interest in QVC complying with HSN's contracts. While Qurate, HSN, and QVC may all share an interest in not alienating a profitable partner, this is a business or commercial interest, not a legal interest. When a communication pertains to business or commercial advice, that communication will not be privileged. *In re Processed Egg Prod.*, 278 F.R.D. at 117; *see also* Restatement (Third) of the Law Governing Lawyers §75(1) cmt. c (2000) ("The scope of the co-client relationship is determined by the extent of the *legal* matter of common interest") (emphasis added). **Communications between Mr. Gassett and QVC employees concerning HSN's agreement or relationship Mr. Lessman—such as Document 3019—must be produced.** A private agreement between these entities that their communications are privileged does not alter this conclusion.

In contrast, **emails that pertain to compliance with regulations and assessment of legal risks associated with approving on-air claims for the Plaintiffs' nutritional supplements—such as Documents 1540 and 1554—are privileged**. Where in-house counsel collaborates to, for example, ensure compliance with Federal Trade Commission regulations and shares that legal advice with employees from a sister company, those communications are

8

protected by the joint-client privilege. *See In re Teleglobe*, 493 F.3d at 361 (the Court must apply the attorney-client privilege to "encourage *compliance-enhancing* communication") (emphasis in original). These communications reflect the reality that *Teleglobe* understood and considered worthy of the attorney-client protection—that parent companies often centralize the provision of certain legal services for the entire corporate group in one in-house legal department for a variety of legitimate reasons. 493 F.3d at 369. Qurate has an interest in all its subsidiaries complying with the law as it is possible it could be responsible for liabilities or fines incurred by a subsidiary. *See, e.g.*, *In re Teleglobe*, 493 F.3d at 370 (3d Cir. 2007) (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 772 (1984) ("[a] parent and its wholly owned subsidiary have a complete unity of interest.")). Mr. Gassett had experience with the nutritional supplement claims review process and so lent his expertise to QVC to assist with reviewing claims for Plaintiffs' products. These communications were legal and made pursuant to a common legal interest in compliance with the law.

Similarly, where QVC and HSN communicated regarding the incipient conflict with Plaintiffs, the companies shared a legal interest in defending themselves against potential litigation. It is clear from the documents reviewed *in camera* that when Plaintiffs complained to QVC about the treatment of their products in the claims review process and QVC's performance under their contract, those complaints included allegations regarding HSN's conduct. **To the extent HSN and QVC communicated regarding a shared interest in defending themselves in litigation against Plaintiffs—such as in Document 3122—those communications are privileged.**

### C. Waiver

While the Court finds that communications between employees of the sister-entity and Messrs. Gassett and LaMonaca are privileged where the entities share a common legal interest and the communications are legal in nature, that privilege can be waived.  If the substance of these communications or an attorney's conduct is put at issue by Defendant—for example, if Defendant counters a claim that Mr. Gassett purposely slowed the approval of Plaintiffs' nutritional supplements to sabotage their ability to sell those products on QVC by arguing that those communications were appropriate—the privilege is waived.  *See, e.g.*, *Rhone-Poulenc*, 32 F.3d at 863 (finding that a party can waive the attorney-client privilege by asserting defenses that put the attorney's advice in issue in the litigation).  "[A]dvice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."  *In re Processed Egg Products*, 2014 WL 6388436, at *9 (internal citation omitted).  Any defense based on Mr. Gassett's conduct puts his advice and analysis at issue.

However, Plaintiffs only offer two points to support their claim that Defendant has waived the privilege—speculation that "QVC will argue at trial that the claims review process was done in good faith" and Mr. Gassett's Declaration attached to Defendant's Response in Opposition to the Motion to Compel (ECF No. 72-1 at 16–17), in which he states that he "did his job in good faith" and that he did not use the claims review process to keep Plaintiffs' products off the air.  ECF No. 77 at 8–9.  Unfounded speculation about what Defendant may or may not argue at trial is not a basis for holding that the privileged has been waived.  *Oak Lane Printing & Letter Service, Inc. v. Atlantic Mut. Ins. Co.*, No. CIV.A. 04-3301, 2007 WL 1725201, at*3–4 (E.D. Pa. June 13, 2007) (allegations of waiver must be "raised with sufficient specificity and cannot be raised by tenuous conjecture").  Advice of counsel is not in issue simply because it is

relevant; the party invoking the privilege must take an "affirmative step" in the litigation to place the advice of the attorney in issue. *Id.* (citing *Robertson v. Allstate Ins. Co.*, 1999 U.S. Dist. LEXIS 2991 (E.D.Pa. Mar. 10, 1999)).

Conversely, Mr. Gassett in his declaration described his conduct in the claims review process as a defense to Plaintiffs' allegations. *See, e.g.*, ECF No. 72-1 at 17 ¶ 8 ("At no time did I try to drive plaintiffs SLC Sweet, Inc. and Suzanne Somers off of QVC or off of direct response television. Nor did I ever conspire with anyone at QVC or HSN to do so."). While this declaration was filed with the Court and cited several times in the Defendant's Response to the Plaintiffs' Motion to Compel (*see* ECF No. 72 at 10, 13, 14 and n.10), it is not cited for the proposition that Mr. Gassett acted in good-faith or to support a defense to the underlying merits of Plaintiffs' claims. It also does not appear that Defendant attached this declaration to any of its briefing on the merits of the claims and defenses in this action, nor has Defendant stated as a defense in this litigation so far that Mr. Gassett acted in good faith.

Unless Plaintiffs can bring forward citations to the record showing that Defendant put Gasett's conduct in the claims review process at issue as a defense, Defendant has not waived privilege at this time. At this point in the litigation, Defendant has not argued that QVC and Mr. Gassett performed the claims review process in good faith. Defendant has argued that it did not breach its contract with Plaintiffs because Plaintiffs' claims rely on breaches of obligations that are not found in language of their agreement. *See, e.g.*, ECF Nos. 63-1 at 27–28 and 81 at 13–21. Defendants also claim that Plaintiffs' accusations regarding the QVC claims review process and Mr. Gassett's conduct contradict other statements Plaintiffs have made. *See, e.g.*, ECF No. 81 n.2. Because a good faith or reliance on advice of counsel defense would put advice of counsel at issue and require the production of additional documents or prejudice Plaintiffs,

**Defendant will be precluded from raising it at trial unless within ten (10) days of this order Defendant indicates to the Court that it reserves the right to make this defense.  If so, the documents containing Mr. Gassett's communications regarding the claims review process must be produced to Plaintiffs within twenty (20) days of this order**.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will **GRANT IN PART and DENY IN PART** Plaintiffs' Motion to Compel (ECF No. 57) as outlined above.  An appropriate Order follows.  Documents found to have been wrongfully withheld on the basis of the attorney-client privilege must be produced to Plaintiffs **within ten (10) days** of this Order.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**