IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE SOMERS, et al., | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| QVC, INC., | : | NO.  19-cv-04773 |
| *Defendant.* | : | |

## **MEMORANDUM**

**KENNEY, J.**                                                                                                      September 23, 2021

This case concerns QVC's alleged monopolization of the direct response television programming market and exercise of control over the sale of nutritional supplements in that market in breach of QVC's obligations to Plaintiffs, Suzanne Somers and SLC Sweet, Inc. ("Plaintiffs").  Presently before the Court is Defendant's Motion for Partial Summary Judgment on Counts V and IX.  ECF No. 63.

Plaintiffs have sued QVC for allegedly intentionally removing Plaintiffs as sellers of nutritional supplements in the direct response television programming market (the "T.V. Market"), so that QVC could protect sales of HSN's preferred provider of nutritional supplements, Andrew Lessman.  Plaintiffs claim QVC acted to monopolize the television programming nutritional supplement market and engaged in anticompetitive, exclusionary, and predatory conduct.  In addition to their antitrust claims, Plaintiffs assert claims against QVC for unfair competition, fraud, promissory estoppel, violations of the UCC, and breach of the parties' Agreement.  Plaintiffs intend to establish that QVC's actions caused Plaintiffs over $20 million in damages.

Defendant responds that this case is a straightforward commercial contract dispute that Plaintiffs have twisted into a business tort and antitrust lawsuit. QVC claims that there is no genuine dispute of material fact and Plaintiffs' antitrust and business tort claims fail as a matter of law. QVC also argues it expended significant efforts in its performance under the terms of its Agreement with Plaintiffs, did not breach any provisions of the Agreement, appropriately terminated the Agreement, and that Plaintiffs are not entitled to any damages.

## I.  BACKGROUND

Plaintiffs in this case are actress and entrepreneur Suzanne Somers and her affiliated company, SLC Sweet, Inc, which sells products such as clothing, jewelry, and books. ECF No. 65 ¶¶ 1 & 3. Defendant is QVC, Inc., a multi-platform retailer that sells products through direct response television programming, online retail, and other channels. ECF No. 63-2 ¶ 6. Plaintiffs allege that Defendant QVC and the Home Shopping Network ("HSN") acted in tandem to control the sale of nutritional supplements in the T.V. Market and eliminate competitor vendors in that market, including Plaintiffs. *See generally* ECF No. 7. The claimed monopoly began in July 2017, when QVC's parent, Qurate, acquired HSN. *Id.* at ¶ 26. Plaintiffs estimate that HSN and QVC together control ninety-five percent of the T.V. Market. *Id*. Plaintiffs claim that after Qurate acquired HSN, QVC suppressed the sale of Plaintiffs' products to protect this illegal monopoly and advance the career of HSN's provider of nutritional supplements, Andrew Lessman. *Id.*

Prior to 2017, Ms. Somers sold nutritional supplements on Evine, another home shopping television network. Pl. Statement of Undisputed Facts ¶ 9; Def. Statement ¶¶ 9-19. In December 2016, a QVC vendor contacted Rich Yoegel, QVC's Vice President of Merchandising, to see whether QVC would be interested in doing business with SLC. Def. Statement ¶ 20. In early

2017, the parties negotiated a merchandising agreement over several weeks. Def. Statement ¶ 25. On March 17, 2017, SLC notified Evine it was terminating their relationship. Def. Statement ¶ 29. On March 21, 2017, SLC and QVC signed a Merchandising Agreement (the "Agreement") for SLC to sell nutritional supplements on QVC. Joint Undisputed Fact No. 7. Caroline Somers, Suzanne's daughter-in-law and the President of SLC, signed the Agreement on behalf of SLC. Joint Undisputed Fact No. 8. In March 2017, QVC placed its first purchase orders with SLC, totaling approximately $1.3 million. Joint Undisputed Fact No. 9.

Andrew Lessman sells nutritional supplements on QVC and HSN. Joint Undisputed Fact No. 2. His company ProCaps was one of HSN's largest vendors before the Liberty/HSN acquisition, and still is one of HSN's largest vendors today. Joint Undisputed Fact No. 10. Andrew Lessman has an agreement with HSN which provides that the parties to the agreement intend him to be the sole provider of nutritional supplements on HSN. ECF No. 69 at 8; ECF No. 83 at 4.

In July 2017, Liberty Interactive announced the HSN acquisition. Joint Undisputed Fact No. 4. ln December 2017, Liberty Interactive formally completed the HSN acquisition and comes to own 100% of QVC and 100% of HSN. Joint Undisputed Fact No. 5.

## II.      PROCEDURAL HISTORY

SLC and Suzanne Somers initiated this action against QVC on October 15, 2019, alleging breach of contract, wrongful rejection of goods, failure to use best efforts, anticipatory repudiation, unfair competition, fraud, promissory estoppel, intentional interference with contractual relations, unfair business practices, and violation of the Sherman Act. ECF No. 1. Plaintiffs then filed an Amended Complaint on December 20, 2019. ECF No. 7. Defendant filed a Motion to Dismiss for Failure to State a Claim on January 24, 2021 (ECF No. 8), which the

Court denied.  ECF No. 18.  Defendant filed its Answer on March 18, 2020 (ECF No. 19), and the case proceeded through discovery.

On May 7, 2021, Plaintiffs filed a Partial Summary Judgment Motion, seeking summary judgment on Count I (Breach of Contract) and Count II (Violation of the UCC).  ECF No. 65.  Defendant also brought a Partial Summary Judgment Motion seeking judgment in its favor on Counts I, III, IV, V, VI, VII, VIII and IX.  ECF No. 63.  On August 24, 2021, the Court denied Plaintiffs' Motion (ECF No. 65) in its entirety and denied Defendant's Motion (ECF No. 63) as to Counts I, III, IV, VI, VII, and VIII.[1]  Presently before the Court is Defendant's Motion for Partial Summary Judgment as to Counts V (Violation of CA Business and Professions Code § 17200) and IX (Violation of § 2 of the Sherman Act).  ECF No. 65.

### III. JURISDICTION AND LEGAL STANDARD

The Court has jurisdiction over this matter under 28 U.S.C. § 1331 as it arises under the laws of the United States.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex*, 477 U.S. at 322–23.  If the movant sustains its burden,

---

[1] The Court noted in ruling on the Defendant's Partial Summary Judgment Motion as to Counts I, III, IV, VI, VII, and VIII that the Court would revisit the sufficiency of the evidence pursuant to F.R.C.P. 50.

4

the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A fact is "material" if it might affect the outcome of the case under governing law.  *Id.*  To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## IV.   DISCUSSION

### A.   Count IX – Violation of the Sherman Act

In Count IX of the Amended Complaint, Plaintiffs allege that Defendant violated the Sherman Act, 15 U.S.C. § 2, through its monopolization or attempted monopolization of the trade or commerce of nutritional supplements in the T.V. Market.  ECF No. 7 ¶¶ 222–31.

Section 2 makes it unlawful to "monopolize, or attempt to monopolize," interstate or international commerce.  15 U.S.C. § 2.  It is "the provision of the antitrust laws designed to curb

the excesses of monopolists and near-monopolists." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007). "[Section] 2 makes the conduct of a single firm unlawful only when it actually monopolizes or dangerously threatens to do so." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993).

A plaintiff bringing an attempted monopolization claim must allege that: (1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 75 (3d Cir. 2010) (internal quotations omitted). "Liability hinges on whether valid business reasons, as part of the ordinary competitive process, can explain [QVC]'s actions that resulted in a dangerous probability of achieving monopoly power." *Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 339 (3d Cir.), cert. denied, 139 S. Ct. 211 (2018) (citing *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 393 (3d Cir. 2016)). The Court must "carefully scrutinize[] enforcement efforts by competitors because their interests are not necessarily congruent with the consumer's stake in competition." *Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 109 (3d Cir.1992). As an essential part of their case, Plaintiffs must articulate the relevant product and geographic market, show a cognizable antitrust injury, and explain QVC's power within the market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

Plaintiffs claim that Defendant QVC has an illegal monopoly over the sale of nutritional supplements in the T.V. Market. ECF No. 7 ¶¶ 222–31. Per Plaintiffs, QVC evidenced its specific intent to monopolize the T.V. Market by falsely luring and inducing Plaintiffs into the "sham" Agreement and purchase orders so it could eliminate competition from Plaintiffs in the T.V. Market. *Id.* ¶ 227. Plaintiffs further claim QVC possesses and controls nearly all of the

T.V. Market and that Plaintiffs have suffered antitrust injury in the form of, among other things, lost profits from a reduced ability to compete, which was proximately caused by QVC's monopolization or attempted monopolization of the television programming nutritional supplement market. *Id.* ¶ 227–30.

Defendant claims Plaintiffs' antitrust allegations fail as a matter of law for four reasons: the lack of (1) antitrust injury; (2) support for Plaintiffs' claimed relevant market; (3) market power by QVC and HSN; and, (4) evidence for QVC's specific monopolistic intent. ECF No. 63-1 at 4. Defendant states that Plaintiffs failed to create genuine issues of fact on these key points during fact discovery and exacerbated that problem by failing to engage an antitrust expert. *Id.*

**1. Product Market**

A product market's "outer boundaries" are defined by looking to the "reasonable interchangeability of use" between the product itself and substitutes for it. *Queen City Pizza*, 124 F.3d at 436 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). Interchangeability of use means that one product is "roughly equivalent" to another product for its intended use. 124 F.3d at 437. "In most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers." *Id.* at 436. Factors to be considered include price, use, and qualities. *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991) (citing *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956)). The products in a relevant product market would be characterized by a cross-elasticity of demand, meaning that a rise in the price of a good within a relevant product market would tend to create a greater demand for other like goods in that market. 952 F.2d at 722. Put differently, if a consumer were looking to purchase a product in a particular market, are

"reasonable substitutes" available if a preferred product is unavailable. *See Novak v. Somerset Hosp.*, No. 3:07CV304, 2014 WL 4925200, at *13 (W.D. Pa. Sept. 30, 2014), aff'd, 625 F. App'x 65 (3d Cir. 2015).

Plaintiffs claim that "the television programming nutritional supplement market" is a relevant market for antitrust purposes and that the T.V. Market is a distinct and recognized market. ECF No. 7 ¶ 226; ECF No. 84-2 at 3–4. Plaintiffs argue that summary judgment should be denied here because "special characteristics" of the relevant industry can influence the market definition and "a discrete channel of distribution" can be a relevant market for antitrust purposes. *See* ECF No. 84-2 at 4–5 (citing *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chemical Corp.*, 579 F.2d 20, 28 (3d Cir. 1978), cert. denied, 439 U.S. 876 (1978) and *GN Netcom, Inc. v. Plantronics, Inc.*, 967 F. Supp. 2d 1082, 1087 (D. Del. 2013)).

However, Plaintiffs have not presented any evidence sufficient to raise a genuine dispute of material fact as to whether the T.V. Market has the "special characteristics" necessary to render it a relevant market for antitrust purposes, nor have they shown "that enough customers do not view other methods of distribution as viable substitutes to the distribution method in question." *GN Netcom, Inc.*, 967 F. Supp. 2d at 1087. Plaintiffs' only factual citations for their propositions come from the Agreement between QVC and SLC and statements from Qurate's CEO and advertising materials. ECF No. 84-2 at 5–7. Nowhere in the record do Plaintiffs make any kind of showing that consumers who purchase nutrition supplements on the T.V. Market view other channels of distribution, such as e-commerce or brick-and-mortar stores, as nonviable substitutes if their preferred product is not offered on the T.V. Market. Nor have Plaintiffs shown what other nutritional supplements are reasonable substitutes for their products, even if certain consumers would prefer to purchase Plaintiffs' products. In fact, nowhere in the record

have Plaintiffs clearly proposed a product market that contains all products that consumers consider reasonably interchangeable, nor have they presented any evidence or analysis on cross-elasticity of demand.

Plaintiffs cite to *Brown Shoe Co. v. U.S* for their proposition that the T.V. Market is a valid submarket for antitrust purposes, but have not attempted to make the showing outlined in that case.  370 U.S. 294 (1962).  In *Brown Shoe Co.*, the Court stated that well-defined submarkets can constitute product markets for antitrust purposes where such a submarket can be determined by "examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors."  *Id.* at 325.  However, Plaintiffs have not brought forward any evidence on any of these factors to show that the T.V. Market meets this standard for a recognizable submarket.  Plaintiffs cite only to QVC's Agreement with SLC—which contains several provisions limiting SLC's ability to promote and sell its products only on other "Direct Response Television Programs"—and statements made by Qurate which show that the company sought to differentiate itself from e-commerce platforms and brick-and-mortar companies.  ECF No. 84-2 at 5–7.  Plaintiffs cite no evidence showing industry or public recognition of the T.V. Market as a separate economic entity, the product's peculiar characteristics and uses, any unique production facilities, that there are distinct T.V. Market customers, distinct prices, sensitivity to price changes, and specialized vendors.

Therefore, Plaintiffs have not articulated a coherent product market.  *See*, *e.g.*, *Multiple Energy Techs. v. Under Armour*, No. 2:20- CV-664-NR (W.D. Pa. June 29, 2021).

**2. Geographic Market**

As with the product market, the Plaintiffs bear the evidentiary burden of proving the relevant geographic market. *Tunis Bros. Co.*, 952 F.2d at 726. "[T]he relevant geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 183–84 (3d Cir. 2015) (citation omitted). The geographic market "may be local, regional, national or international in origin." *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 697 (E.D. Pa. 2007). The geographic market is defined with reference to both "the market area in which the seller operates" and where "the purchaser can practicably turn for supplies." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327, 331–32 (1961); *see also Tunis Bros. Co.*, 952 F.2d at 726 ("the geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product").[2]

Plaintiffs assert that the relevant geographic market is defined in the Agreement. ECF No. 84-2 at 7–8. However, the geographic market must be defined by buyer behavior, i.e. where consumers wanting to purchase nutritional supplements would look to purchase such supplements. *See Novak v. Somerset Hosp.*, 2014 WL 4925200, at *16. Plaintiffs reject Defendant's argument that Plaintiffs' competitors include brick-and-mortar and online sellers of supplements, but they have not even argued that consumers, when shopping for supplements, limit themselves to certain distribution channels, such as the T.V. Market. *See, e.g.*, *Tunis Bros.*

---

[2] While *Tunis* and several other cases relied on by the Court involved alleged violations of Section 1 of the Sherman Act, the Court finds the cited analysis instructive here. The Third Circuit has made it clear that, while "'inquiries into the scope of competition under § 1 and § 2 are not precisely the same,'" where the Plaintiffs have failed to "present a sufficiently close factual issue," it is not necessary for the Court to confine itself to case law only dealing with claims brought under the same section. *Tunis Bros. Co.*, 952 F.2d at 724 n.3 (citing *Columbia Metal Culvert Co.*, 579 F.2d at 27 n.11).

*Co.*, 952 F.2d at 726 (finding that plaintiff's evidence failed to establish a geographic market in part because "customers testified [ ] that they did not limit themselves to such a restricted geographic region"). Because Plaintiffs cite no evidence on buyer behavior, they have not established a relevant geographic market. *Id*. at 727 (a geographic market delineated "without reference to a market as perceived by consumers and suppliers, fails to meet the legal standard necessary for the relevant geographic market").

Though Plaintiffs dispute Defendant's claim that Plaintiffs are required to introduce expert testimony to define a relevant market, the Court need not address that issue because the Plaintiffs have clearly not met their burden. The Court will not opine on whether Plaintiffs could have proposed a viable relevant market or what evidentiary showing could have met the standards under these circumstances.

The Plaintiffs' failure to define a legally sufficient relevant market is fatal to their Section 2 claim (*see Queen City Pizza, Inc*., 124 F.3d at 436) and thus the Court will not address the remaining elements (whether QVC has the requisite market power or anticompetitive intent). *Novak v. Somerset Hosp*., 2014 WL 4925200, at *16.

Nonetheless, the Court will discuss Plaintiffs' failure to state an antitrust injury, which is equally fatal to Plaintiffs' antitrust claim.

### 3. Injury to Competition

"Competition is at the heart of the antitrust laws." *Phila. Taxi Ass'n, Inc*., 886 F.3d at 338. The Sherman Act does not "proscribe all unseemly business practices," *Sitkin Smelting & Ref. Co. v. FMC Corp*., 575 F.2d 440, 448 (3d Cir. 1978); rather, the antitrust laws aim only to curtail anticompetitive conduct, "or a competition-reducing aspect or effect of the defendant's behavior," *Phila. Taxi Ass'n, Inc*., 886 F.3d at 338. If consumers can purchase comparable

11

goods at competitive prices, there can be no antitrust violation. *Tunis Bros. Co.*, 952 F.2d at 728. Thus, Plaintiffs "must prove that the challenged conduct affected the prices, quantity or quality of goods and services, not just [their] own welfare." *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (quotations omitted). This requirement reflects the fundamental purpose of antitrust law: "to protect competition, not competitors." *Id*.

The Court finds that Plaintiffs have failed to show that QVC caused any injury to competition. *See Tunis Bros. Co.*, 952 F.2d at 727–28. The record does not raise any genuine dispute of material fact or support a reasonable finding that Plaintiffs were forced out of a relevant market or that consumers were harmed.

Plaintiffs claim that by removing Plaintiffs and their products from the T.V. Market, QVC reduced competition, consumer choice, and the quantity of goods. ECF No. 84-2 at 8–9; *see also id*. at 10 ("[b]y eliminating Plaintiffs from the Direct Response Television Programming Market, QVC has eliminated product choice and the quantity of goods for the consumer"). However, Plaintiffs have not brought forward any evidence showing that a single customer paid a higher price for a supplement because of QVC's alleged conduct or that consumers were deprived of the option to purchase Plaintiffs' supplements. In fact, Plaintiffs have stated that consumers had access to Plaintiffs' products through their website and on other platforms, including SuzanneSomers.com and Facebook Live. ECF No. 7 ¶ 10. Plaintiffs have also not cited any evidence showing that the quality or quantity of supplements for sale in any relevant market has declined. Moreover, Plaintiffs' claimed lost profits from a reduced ability to compete (ECF No. 7 ¶ 229–30) are not a cognizable antitrust injury. *See Huhta v. Children's Hosp. of Phila.*, No. CIV. A. 93–2765, 1994 WL 245454, *2 (E.D. Pa. May 31, 2004) (harm to doctor from lost referrals was not harm to competition). Therefore, the Court agrees with Defendant

that Plaintiffs have not met their burden to put forward evidence to create a genuine issue of fact as to whether Defendant's conduct caused the type of injury that is redressable under the Sherman Act.

Because Plaintiffs are unable to demonstrate antitrust injury or define a legally sufficient relevant market, Count IX fails as a matter of law.

### B.  Count V – Violation of CA Business and Professions Code 17200

The California Unfair Competition Law ("UCL") creates a cause of action for business practices that are unlawful, unfair, or fraudulent.  Cal. Bus. & Prof. Code § 17200 (West). Where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks.  *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012) (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Cal. Ct. App. 2007)); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 866 (N.D. Cal. 2014) (a corporate competitor is not entitled to the protection of the fraudulent prong of the UCL).

Plaintiffs claim that QVC's business practices were both "unfair" and "unlawful" under § 17200.  ECF No. 7 ¶ 153; ECF No. 84 at 25.[3]  Because the Court has found that Defendant did not violate the Sherman Act, the only remaining predicate acts that could be the basis for the UCL claim are based on the parties' Agreement and do not include allegations of harm to the general public or individual consumers.  A UCL action based on a contract is not appropriate

---

[3] In their Amended Complaint, Plaintiffs also allege that that QVC's conduct was fraudulent under the UCL.  ECF No. 7 ¶ 156.  However, Plaintiffs do not address this claim in their Response to the Motion (ECF No. 84), and it is clear that corporate competitors cannot bring claims under the fraudulent prong of the UCL.  *See* 77 F. Supp. 3d at 866.

13

where the public in general or consumers are not harmed by the defendant's alleged unlawful practices. *Rosenbluth Int'l, Inc. v. Superior Ct.*, 101 Cal. App. 4th 1073, 1077 (Cal. Ct. App. 2002); *see also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (Cal. Ct. App. 2007) ("Where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks."). Plaintiffs have not put forward evidence that QVC's alleged conduct caused harm to the public or consumers, as Plaintiffs have not claimed that the public was deceived in any way or forced to pay higher prices for nutrition supplements. Rather, this is a dispute between commercial parties over their economic relationship. *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. M:09-CV-02040 RMW, 2011 WL 1399783, at *3 (N.D. Cal. Apr. 13, 2011). Therefore, Plaintiffs' UCL claim fails and the Defendant is entitled to judgment as a matter of law on Count V.

## V.     CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's Partial Motion for Summary Judgment (ECF No. 63) as to Counts V and IX of the Amended Complaint, as outlined above. An appropriate order follows.

**DATE:** 09/23/2021                                    **BY THE COURT:**

                                                        **/s/ Chad F. Kenney**
                                                        _____
                                                        **CHAD F. KENNEY, JUDGE**